United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 22, 2004**

Charles R. Fulbruge III
Clerk

REVISED NOVEMBER 12, 2004

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 03-51171
_____

HAROLD LLOYD SHIELDS; ET AL

                    Plaintiffs

DAN BALDWIN, Administrator for the Estate of
Harold Lloyd Shields, Deceased

                    Appellant

     v.

CAROL L TWISS; KERR COUNTY TEXAS

                    Defendants - Appellees

_____

Appeal from the United States District Court for the
Western District of Texas, San Antonio

_____

Before KING, Chief Judge, and BARKSDALE and PICKERING, Circuit
Judges.

KING, Chief Judge:

     Plaintiff Harold Shields filed this suit after officials in
Kerr County, Texas dropped charges against him for the aggravated
sexual assault of a child.  Claiming that he never should have
been charged in the first place, Shields sued Kerr County and two
county employees for alleged violations of federal and state
laws.  During the pendency of the lawsuit, Shields attempted to

1

stay the case to depose members of the grand jury that indicted him.  The district court issued orders that: (1) quashed the depositions of the grand jurors; (2) denied Shields's requests to stay or continue the case while he sought state-court approval to depose the grand jurors; and (3) granted summary judgment on all counts in favor of the defendants.  Shields appeals these rulings.  For the following reasons, we AFFIRM the judgment of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In November 1999, Kerr County Sheriff's Deputy Carol L. Twiss began investigating the sexual assault of a young girl, "K.S."  During the course of the investigation, K.S. told investigators that her grandfather and uncle had molested her. She also said that two non-family members--one of whom she referred to as "Mr. M"--were involved.

Deputy Twiss suspected that Harold Lloyd Shields was Mr. M. Initially, the principal ground for suspicion appears to have been the fact that Shields was acquainted with K.S.'s grandfather.  Subsequently, during an interview conducted by Deputy Twiss and others, K.S. was presented with a photographic lineup and identified a picture of Shields as resembling Mr. M. In addition, Deputy Twiss and others interviewed Shields and considered several of his responses suspicious.

Based on their investigation, Kerr County officials decided to prosecute Shields.  They began by seeking a grand-jury

2

indictment against him.  As part of this process, Deputy Twiss filed an affidavit and testified before the grand jury. Ultimately, the grand jury indicted Shields on three counts of aggravated sexual assault of a child.  Shields subsequently surrendered to Kerr County officials, was arrested, and paid a non-refundable bond fee of $10,000 to secure his release pending trial.  Before trial, however, K.S. recanted her allegations concerning Mr. M, and Kerr County dismissed the charges against Shields.

Shields now contends that Deputy Twiss failed to conduct an appropriate investigation.  According to Shields, had an appropriate investigation been carried out, it would have revealed his innocence.  In support of this contention, he points to a series of facts that were inconsistent with his being Mr. M. For example, due to impotence, he was unable to perform some of the acts that K.S. alleged were done to her.  Additionally, he did not move to Texas until approximately two years after K.S. said that Mr. M began molesting her.  Shields also contends that the photographic lineup shown to K.S. was flawed and prejudicial because only the photograph of Shields bore physical characteristics similar to K.S.'s description of Mr. M.  Angered by these perceived lapses on the part of Deputy Twiss and Donnie Coleman, the Kerr County Assistant District Attorney who

prosecuted him, Shields sued.[1]

In September 2001, Shields filed his second amended complaint. In it, he named as defendants Deputy Twiss and Assistant District Attorney Coleman in their individual capacities.[2] He also named Kerr County, Texas as a defendant.

Proceeding under 42 U.S.C. § 1983, Shields alleged in his second amended complaint that each of the defendants violated his constitutional rights while acting under the color of state law. Specifically, Shields asserted claims of unreasonable arrest, unreasonable detention, and malicious prosecution under the Fourth and Fourteenth Amendments. He further averred that Deputy Twiss and Assistant District Attorney Coleman failed to conduct a reasonable investigation. Moreover, he contended that Kerr County should be held liable for these violations of his constitutional rights because it failed to supervise Deputy Twiss properly and to provide her with a manageable caseload, thereby preventing her from conducting a reasonable investigation. Similarly, he asserted that Kerr County did not properly train or

[1] After Shields's death in June 2002, Holly Rena Shields Robinson, the administrator of his estate, was substituted as the plaintiff in this case. Subsequently, Robinson was disqualified from being Shields's personal representative by the District Court of McPherson County, Kansas, and Daniel L. Baldwin was appointed as the new administrator and personal representative. Accordingly, in June 2004, this court granted a motion to substitute Daniel Baldwin as the appellant. In the interest of clarity, the court will refer to the appellant as "Shields."

[2] On appeal, the claims against Donnie Coleman were dismissed by agreement of the parties.

4

supervise Deputy Twiss in the creation and presentation of photographic lineups.  Finally, Shields invoked the district court's supplemental jurisdiction and pleaded four tort claims under Texas law against Twiss and Coleman: false arrest, false imprisonment, malicious prosecution, and negligent investigation.

This case was originally assigned to the late Judge H.F. Garcia.  During discovery, Shields sought to depose several members of the state grand jury that indicted him, ostensibly to show that the indictment they returned was faulty because exculpatory evidence had been withheld from them.  The defendants moved to quash the subpoenas, arguing that both federal and state law require the proceedings of grand juries to be kept secret.  In response to these motions to quash, Shields moved the court for leave to file a consolidated response.  In his consolidated response, Shields noted that there were no existing records of the grand-jury proceedings, and he contended that, as a result, he needed to depose the grand jurors to rebut the defendants' reliance on the indictment to preclude his constitutional claims.

On January 7, 2002, the district court issued an order granting the defendants' motions to quash and ordering Shields's counsel not to contact any member of the Kerr County grand jury that indicted Shields.  This order was signed "Fred Biery [district judge] for H.F. Garcia."  One day later, Judge Garcia granted Shields's motion to file a consolidated response. Concerned that the court had not considered his consolidated

5

response when ruling on the motions to quash, Shields promptly filed a motion for reconsideration, which then-District Judge Edward Prado summarily denied.

Undeterred, Shields next petitioned a Texas state court to permit him to depose the grand jurors. He also asked the district court to stay this case pending the outcome of the ancillary state-court proceeding. Judge Biery denied Shields's request for a stay in August 2002.

Each defendant filed a motion for summary judgment in March 2003. Later that month, this case was reassigned to Judge Royal Furgeson. In July 2003, Judge Furgeson granted the defendants' motions for summary judgment.

In his decision granting summary judgment for the defendants, Judge Furgeson first held that Shields failed to create a genuine issue of fact concerning whether Deputy Twiss and Assistant District Attorney Coleman withheld information from the grand jury. Accordingly, Judge Furgeson held that the grand jury's finding of probable cause precluded Shields's Fourth Amendment claims regarding his arrest and imprisonment. Judge Furgeson further stated that even if the indictment had not been returned, Shields's claims would still fail because he did not show that Twiss and Coleman should be denied qualified immunity for acting unreasonably in determining that probable cause existed. Second, Judge Furgeson found that Shields's malicious-prosecution claim was also precluded by the grand jury's finding

6

of probable cause.  Additionally, according to Judge Furgeson, Shields's malicious-prosecution claim failed because he did not allege that either Twiss or Coleman acted with malice.  Third, Judge Furgeson found that there was no authority supporting a constitutional claim for "unreasonable investigation."  Fourth, Judge Furgeson found that Kerr County could not be held liable because Shields put forward no evidence of any constitutional violation.  Likewise, Judge Furgeson found that Shields put forward no evidence showing that Kerr County had a policy or custom encouraging the use of unconstitutional photographic lineups.  Finally, Judge Furgeson found that summary judgment in favor of the defendants was appropriate on Shields's state-law claims.  In support of this conclusion, Judge Furgeson stated that Shields's failure to establish a genuine issue of fact concerning his constitutional claims doomed his state-law claims and, alternatively, that Shields had not presented evidence that Twiss and Coleman should be denied official immunity under Texas state law.  Accordingly, Judge Furgeson granted summary judgment for the defendants on all counts and dismissed Shields's suit with prejudice.

After summary judgment was granted against him, Shields filed a motion for reconsideration under Rule 59.  In this motion, he asked the district court to vacate its final judgment and stay the case while he appealed to the Texas Supreme Court an adverse state-court ruling regarding his request to depose the

7

grand jurors.  Judge Furgeson denied Shields's motion, noting that the district court had itself considered the discoverability of the grand jurors' testimony and refused to permit the depositions.

Following the denial of his motion for reconsideration, Shields filed the present appeal.

## II. DISCUSSION

Shields raises three issues in his appeal.  First, he maintains that the district court erred in quashing the depositions of the grand jurors.  Second, he asserts that the district court should have granted his request for a stay pending the outcome of the ancillary state-court litigation.  Third, he contends that the district court erroneously determined that there exist no genuine issues of material fact preventing the entry of summary judgment.  This court examines each of these claims in turn.

### A. The Request To Depose Grand Jurors

The court begins with Shields's claim that the district court erred when it quashed the depositions of the grand jurors. According to Shields, since no record existed of the grand jury's proceedings, he needed to depose members of the grand jury to prove that Deputy Twiss and Assistant District Attorney Coleman withheld information from the grand jury.  Shields contends that by improperly quashing these depositions, the district court made it impossible for him to prove his malicious prosecution and

8

civil rights claims.

This court reviews a district court's decision to quash deposition subpoenas for abuse of discretion. <u>Theriot v. Parish of Jefferson</u>, 185 F.3d 477, 491 (5th Cir. 1999); <u>Tiberi v. CIGNA Ins. Co.</u>, 40 F.3d 110, 112 (5th Cir. 1994).

At the outset, the court notes that under both federal and state law, a general rule of secrecy shrouds the proceedings of grand juries. <u>See</u> FED. R. CRIM. P. 6(e); <u>Douglas Oil Co. of Cal. v. Petrol Stops N.W.</u>, 441 U.S. 211, 218-19 (1979); TEX. CODE CRIM. PROC. ANN. art. 20.02 (Vernon Supp. 2004); <u>In re 5 Byrd Enters.</u>, 980 S.W.2d 542, 543 (Tex. App.--Beaumont 1998, no pet.). Even so, both federal and Texas law permit discovery of grand jury material when the party seeking discovery demonstrates a "particularized need" for the material. <u>United States v. Procter & Gamble Co.</u>, 356 U.S. 677, 682-83 (1958); <u>accord</u> FED. R. CRIM. P. 6(e)(3)(E)(i); TEX. CODE CRIM. PROC. ANN. art. 20.02(d); <u>In re 5 Byrd Enters.</u>, 980 S.W.2d at 543. A party claiming a particularized need for grand jury material under Rule 6(e) has the burden of showing "that the material [it] seek[s] is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that [its] request is structured to cover only material so needed." <u>Douglas Oil Co.</u>, 441 U.S. at 222. This burden must be met even when the grand jury in question has concluded its operations, as is the case here. <u>Id</u>. While a

party can in limited circumstances obtain grand jury material by showing a particularized need, the need for protection of the workings, integrity, and secrecy of grand jury proceedings is a well-established, long-standing public policy. The secrecy of the grand jury proceedings is not something that is intruded into except in rare circumstances.

In the present case, Shields has not shown a particularized need for compelling the disclosure of grand jury information, much less for compelling the depositions of grand jury members. Shields claims that he needs to depose members of the grand jury to prove that information was withheld from them. He has not, however, put forward any evidence whatsoever showing that Twiss or Coleman withheld information from the grand jury, a point noted by the district court.[3] Robinson v. Twiss, No. SA-01-CA-0289-RF, slip op. at 9-10 (W.D. Tex. Jul. 9, 2003) (holding that Shields provided no concrete evidence for his claim that information was withheld from the grand jury). Twiss, conversely, has testified under oath that she presented all relevant information in her possession--both incriminating and exculpatory--to the grand jury. Likewise, Donnie Coleman, the assistant district attorney who presented the case against Shields to the grand jury, testified under oath that Twiss gave

---

[3] Indeed, for the most part, Shields does not allege that Twiss even possessed exculpatory information; rather, he maintains that she would have learned of exculpatory details if she had conducted a reasonable investigation.

10

the grand jury "the things . . . that matched up [and] the things

. . . that didn't match up."

Because Shields has utterly failed to rebut Twiss and

Coleman's sworn testimony, the district court had no reason to

believe that any useful information would be uncovered if Shields

were allowed to depose the grand jurors.  Without some evidence

to support Shields's claims that the defendants withheld

exculpatory evidence, the district court certainly had no reason

to believe that these depositions were necessary to "avoid a

possible injustice," one of the elements required for a showing

of a particularized need for grand jury material.  See Douglas

Oil Co., 441 U.S. at 222 (holding that a party claiming a

particularized need for grand jury material must show that

disclosure is necessary to avoid a possible injustice in another

judicial proceeding).  Shields has presented no evidence that

would justify a fishing expedition into the proceedings of the

grand jury.  Accordingly, the district court did not abuse its

discretion when it granted the motion to quash.

Even if Shields had put forward evidence of his need for

grand jury material--something he has not done--there is still

the question of whether he could ever compel the depositions of

grand jury members.  Shields has pointed to no authority for the

proposition that one can take the depositions of grand jury

members when, as is the case here, there is no transcript of the

grand jury proceeding.  This court, like other courts, is unaware

11

of any authority supporting this proposition.  See, e.g., United States v. Roethe, 418 F. Supp. 1118, 1119 (D.C. Wis. 1976) ("Furthermore, [the defendant] has suggested no authority, and I am aware of none, in support of his request to conduct an examination of the grand jurors.").  If depositions of grand jurors could ever be taken--a matter as to which this court expresses no opinion--it would take a far more substantial showing of particularized need than what Shields has made here.[4]  Thus, the district court acted well within the bounds of its discretion when it granted the motion to quash Shields's deposition notices.

**B.    The Request For A Stay**

The court next turns to Shields's claim that the district court erred in denying his request to stay, abate, or continue its disposition of the case pending further discovery.

This court reviews a district court's denial of a motion for continuance brought under FED. R. CIV. P. 56 for abuse of discretion.  See Liquid Drill, Inc. v. U.S. Turnkey Exploration, Inc., 48 F.3d 927, 930 (5th Cir. 1995); Solo Serve Corp. v. Westowne Assoc., 929 F.2d 160, 167 (5th Cir. 1991).

Both before and after summary judgment was granted against

---

[4]    Additionally, had Shields demonstrated a particularized need for deposing the grand jurors, the court would still have to address whether it can revisit the state court's refusal to permit the depositions.  Because Shields did not demonstrate a particularized need, however, the court need not reach this question.

him, Shields sought, and was denied, a stay or continuance from the district court pending the final resolution of the collateral proceeding that he initiated in state court in pursuit of permission to depose the grand jurors. Shields now contends that by not staying or continuing the case pending resolution of this state-court litigation, the district court denied him a full and fair opportunity to discover information essential to his opposition to summary judgment, a denial that constitutes reversible error. In support of this claim, Shields invites the court's attention to Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986), which holds that when a party is not given a full and fair opportunity to discover information essential to its opposition to summary judgment, the limitation on discovery is reversible error.

Shields's appeal of the district court's denial of his requests for a stay or continuance is undermined by the fact that the state-court litigation has now been resolved against Shields. Specifically, the Texas Supreme Court denied review in the ancillary state-court proceeding on February 13, 2004, thereby making permanent the state trial court's denial of Shields's discovery request. In re Grand Jury Proceedings 198.GJ.20, 129 S.W.3d 140 (Tex.App.--San Antonio 2003, pet. denied). Consequently, the issue of whether the proceedings in this suit should have been stayed until the Texas Supreme Court acted is moot and need not be addressed on the merits by this court.

13

**C. The Decision To Grant Summary Judgment**

Finally, the court turns to Shields's claim that the district court erred by granting summary judgment in favor of the defendants.

This court reviews summary judgments de novo, applying the same standard as the district court.  See <u>Fierros v. Tex. Dept. of Health</u>, 274 F.3d 187, 190 (5th Cir. 2001).  Specifically, "summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)).  Where, as here, the burden of production at trial ultimately rests on the non-movant, "the movant must merely demonstrate an absence of evidentiary support in the record for the non-movant's case."  <u>Byers v. Dallas Morning News, Inc.</u>, 209 F.3d 419, 424 (5th Cir. 2000).  By contrast, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e).  According to the Supreme Court, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  <u>Anderson</u>, 477 U.S. at 249.  When a district court reviews the support for a nonmovant's case, the "evidence of the

14

non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor."  Id. at 255.

1.    Shields's Federal Law Claims

In his second amended complaint, Shields alleges six constitutional violations that he claims are actionable under 42 U.S.C. § 1983: (1) unreasonable arrest; (2) unreasonable detention; (3) malicious prosecution; (4) unreasonable investigation; (5) failure to supervise (against Kerr County) resulting in an inadequate investigation; and (6) failure to supervise and train (against Kerr County) with respect to the use of photographic lineups.  The court examines each of these claims in turn.

With respect to Shields's unreasonable arrest, unreasonable detention, and malicious prosecution claims, Shields principally contends that the district court erred in determining that he had not raised a genuine issue of material fact regarding whether there existed probable cause to charge and arrest him.  To the extent that Shields complains of the fact that charges were filed against him, he has not stated a cognizable federal claim after this court's en banc decision in Castellano v. Fragozo, 352 F.3d 939, 953 (5th Cir. 2003) (en banc) ("[C]ausing charges to be filed without probable cause will not without more violate the constitution.  So defined, the assertion of malicious prosecution states no constitutional claim.").

Even so, Castellano does permit a plaintiff to assert a

15

Fourth Amendment claim based on an arrest made without probable cause.  Id.; see also Sorenson v. Ferrie, 134 F.3d 325, 328 (5th Cir. 1998) ("Whether an arrest is illegal . . . hinges on the absence of probable cause.").  This circuit has held, however, that once "facts supporting an arrest are placed before an independent intermediary such as a . . . grand jury, the intermediary's decision breaks the chain of causation" for these constitutional violations.  Taylor v. Gregg, 36 F.3d 453, 456 (5th Cir. 1994) (citing Wheeler v. Cosden Oil & Chem. Co., 744 F.2d 1131, 1132 (5th Cir. 1984)).  Nevertheless, these claims may be maintained if the plaintiff affirmatively shows that "the deliberations of that intermediary were in some way tainted by the actions of the defendants."  Taylor, 36 F.3d at 457 (quoting Hand v. Gary, 838 F.2d 1420, 1427 (5th Cir. 1988)).  Shields claims that he can maintain his unreasonable arrest and detention claims in light of the indictment because exculpatory information was withheld from the grand jury and, accordingly, its deliberations were tainted.  However, as previously discussed, he has put forward no evidence whatsoever that exculpatory information was withheld from the grand jury, whereas both Coleman and Twiss have testified under oath that they provided exculpatory information to the grand jury.  Accordingly, Shields's conclusory allegations that information was withheld are insufficient to create a fact issue warranting the denial of summary judgment, and Twiss cannot be held liable for

16

unreasonable arrest or unreasonable detention based on the absence of probable cause. See, e.g., Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996) (explaining that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden" at summary judgment).

Regarding Shields's "unreasonable investigation" claim, Shields has pointed to no legal basis for a § 1983 action of this sort, and the court knows of none. Hence, this claim also fails.

Finally, Shields asserts two failure-to-supervise claims. First, he claims that Kerr County overworked Twiss and made it impossible for her to investigate her cases properly, resulting in the Fourth Amendment violations that Shields alleges. Second, Shields claims that Kerr County did not properly train Twiss in the use of photographic lineups and, as a result, Twiss used an unconstitutionally suggestive lineup during her investigation of him.[5] With respect to Shields's first failure-to-supervise claim

---

[5] In his second amended complaint, Shields argues that Kerr County should be held liable for its failure to train Twiss in the use of photographic lineups. In his response to the defendants' motion for summary judgment and in his appellate brief, he appears to expand the scope of this claim by attempting to hold Twiss personally liable for this violation as well. As the district court correctly noted, however, Shields has pointed to no authority suggesting that the use of an improper lineup constitutes a distinct constitutional violation giving rise to money damages under § 1983. The one case that Shields does cite, United States v. Merkt, 794 F.2d 950, 958 (5th Cir. 1986), only pertains to the admissibility of pretrial photographic identifications--it does not confer liability on individual defendants under § 1983. Hence, Shields's attempt to hold Twiss

17

(i.e., that Kerr County overworked Twiss and did not supervise her workload), this circuit has held that municipal liability "under section 1983 attaches where a deprivation of a right protected by the Constitution or by federal law is caused by an official policy." Burge v. St. Tammany Parish, 336 F.3d 363, 369 (5th Cir. 2003). Here, however, Shields has not presented a genuine issue of fact concerning whether Deputy Twiss deprived him of any constitutional or federal rights. Thus, Kerr County cannot be held liable for overworking or not properly supervising Twiss. As for Shields's second failure-to-supervise claim (i.e., that Kerr County did not adequately train Twiss in the use of photographic lineups), Shields can only prevail by showing that an official policy or custom "was a cause in fact of the deprivation of rights inflicted." Spiller v. City of Tex. City, Police Dep't, 130 F.3d 162, 167 (5th Cir. 1997) (quoting Leffall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 525 (5th Cir. 1994)). To prevail, Shields must also point to evidence showing that Kerr County adopted the policy or custom in "deliberate indifference to the constitutional rights of its inhabitants." City of Canton v. Harris, 489 U.S. 378, 392 (1989). Shields has put forward no evidence that Kerr County had a policy or training program that encouraged the use of unconstitutional photographic lineups. Likewise, he has not pointed to any evidence that Kerr County was

personally liable for the photographic lineup fails.

18

deliberately indifferent to the constitutional rights of its residents.  Accordingly, this failure-to-supervise claim, like Shields's other federal claims, fails.

We recognize that this is an unfortunate case, but Shields has not established a constitutional violation.

### 2.   Shields's State Law Claims

While Shields raises a number of state-law claims in his second amended complaint, on appeal he only briefs his allegation of malicious prosecution against Deputy Twiss.  Accordingly, since Shields failed to brief his other state-law claims, the court considers them waived.  See FED. R. APP. P. 28(a)(9)(A); L & A Contracting Co., 17 F.3d 106, 113 (5th Cir. 1994).  Only Shields's malicious-prosecution claim under Texas law remains.

Under Texas law, a plaintiff alleging malicious prosecution must establish: (1) the commencement of a criminal prosecution against him; (2) that the defendant caused the prosecution to be commenced; (3) termination of the prosecution in his favor; (4) his innocence; (5) the absence of probable cause for the proceeding; (6) malice in filing the charge; and (7) damages. Richey v. Brookshire Grocery Co., 952 S.W.2d 515, 517 (Tex. 1997).

When the district court ruled on Shields's state-law malicious-prosecution claim under Texas law, it found that: (1) his claim failed because Shields had not created a genuine fact issue regarding the probable-cause and malice elements; and (2)

19

even if Shields could have proven the probable-cause and malice elements, his malicious-prosecution claim still failed because Deputy Twiss was entitled to official immunity. In his appellate brief, Shields briefly discusses the district court's holding regarding probable cause. He does not, however, ever mention--much less contest--the district court's alternative holding on official immunity. Accordingly, the district court's unchallenged holding on official immunity stands, Shields's malicious-prosecution claim under Texas law fails, and the court need not address his argument regarding the probable-cause element of this claim.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.