WIENER, Circuit Judge,
concurring:
I concur entirely in the majority’s holding that Turner’s speech was not a “grievance” and therefore not per se unprotected merely because it might have been made outside the LSP’s grievance process. Yet, I would go further: Rather than remanding for the district court to consider whether Turner’s speech might be unprotected because Warden Cain had some other legitimate penological reason for restricting it, I would hold that it is protected because there is no evidence of such a reason — nor could there be.
To begin with, the first element of a prisoner’s retaliation claim, viz., whether prison officials may have restricted a prisoner’s speech, rendering it “unprotected,” is separate and distinct from the second, third, and fourth elements, viz., whether prison officials intended to restrict that speech, whether the speech was restricted through some regulation or action, and whether the prison officials caused the regulation or action restricting the speech. Common sense dictates that we must not read the second, third, and fourth elements into the first. Just because Warden Cain would not have been permitted to restrict Turner’s speech, rendering it protected, does not mean that he intended to restrict it, that it was restricted, or that he caused it to be restricted. Likewise, the existence of genuine issues of material fact as to the second, third, and fourth elements do not necessarily preclude resolution of the first.
*365 This “inquiry into the protected status of speech is one of law, not fact.”[1] Regardless of what actually happened, Turner’s speech is either “protected” or it is not. On appeal, “we are compelled to examine for ourselves the statements in issue and the circumstances under which they were made to see ... whether they are ... protected].”[2]
To begin with, speech is “protected” when the government is not permitted to restrict it.[3] Even “imprisonment does not automatically deprive a prisoner of some important constitutional protections, including those of the First Amendment.”[4] Instead, a prisoner’s speech — like all speech — is presumed to be protected,[5] irrespective of its content.[6] For “a prison regulation [or action]” to render such speech unprotected, Turner v. Safley requires that it be “reasonably related to legitimate penological interests.”[7] This mandates balancing the prisoner’s'interest in his right to speech against the prison officials’ interest in restricting that right. In so doing, we “must reach the most appropriate possible balance of the competing interests,” even when, as here, the “particularized balancing is difficult.”[8] Turner is entitled to judgment on this first element of his claim because (1) there is no *366 evidence of any interest that would have permitted Warden Cain to restrict Turner’s speech regarding the taxes and (2) even if there were, such an interest is insufficient to satisfy Turner when speech is restricted nonneutrally.
I.
Although Turner has the burden of persuasion (or proof) as to each element of his claim on summary judgment,[9] he does not necessarily have the burden of production.[10] The burden of persuasion, which is “[a] party’s duty to convince the fact-finder,” [11] is distinct from the burden of production, which is “[a] party’s duty to introduce enough evidence on an issue to have the issue decided by the fact-finder, rather than decided against the party ... [on] summary judgment.”[12]
Because Turner “has the ultimate burden of persuasion,” he also has “the burden of producing- evidence to make out a ‘prima facie ’ case.”[13] Stated differently, he must produce evidence that, if uncontested, would be enough to entitle him to judgment on each element.[14] If he does not, he will be denied summary judgment. Here, that means Turner must produce evidence that, if uncontested, would prove that his speech was protected. He does not, however, have the only burden of production as to this element.
Even though Turner has the burden of producing evidence that, if uncontested, would prove his speech was protected, Warden Cain has the burden of producing — or “putfting] forward” — evidence of a legitimate penological interest in restricting Turner’s speech.[15] This is Warden Cain’s burden of production, not Turner’s, because there is “no express or implied requirement in Rule 56” that Turner produce- evidence negating Warden Cain’s case.[16] Notably, “[o]ne of the principal *367 purposes of [Rule 56] is to isolate and dispose of factually unsupported ... defenses, and ... it should be interpreted in a way that allows it to accomplish this purpose.”[17] Because this “burden of production at trial ultimately rests on [Warden Cain], ‘[Turner] must merely demonstrate an absence of evidentiary support in the record for [Warden Cain]’s case.’”[18] This is sufficient to discharge Turner’s burden of production as to the first element.[19]
I am satisfied that Turner has met his burden of production because, as noted, Turner’s speech is presumptively protected and he has identified an absence of evidence regarding a legitimate penological interest that would have permitted Warden Cain to restrict his speech regarding the effect of the taxes on his prices while allowing his speech on the prices generally.
As Turner has “ma[de] out a prima facie case that would entitle him to a judgment as a matter of law if uncontroverted at trial, summary judgment will be granted [in favor of Turner] unless [Warden Cain] offers some competent evidence that ... there is a genuine issue as to a material fact.”[20] Because he does not also have the ultimate burden of persuasion, Warden Cain’s burden of production is less than Turner’s. To meet it, he must “respond[ ] adequately through [evidence] to the allegations in [Turner’s] complaint.”[21] He must provide evidence that “show[s] more than a formalistic logical connection between [the limitation] and a penological objective.”[22] Á “bare assertion ... is not enough” — Warden Cain “must adduce specific evidence to support that assertion.”[23] As Rule 56 makes clear, if Warden Cain “fails to properly support an assertion of fact or fails to properly address another party’s assertion of fact as required by Rule 56(c), the court may ... consider the fact undisputed for purposes of the motion” and may “grant summary judgment if the motion and supporting materials— including the facts' considered undisputed — show that the movant is entitled to it.” [24]
It is undisputed that Cain has not produced evidence of any legitimate penologi *368 cal interest that would have permitted him to restrict some, but not all, of Turner’s speech at the Rodeo, much less an interest that would pass muster under Turner. Instead, Warden Cain only produced evidence of an interest in transferring Turner, stating: “[Turner’s] allegations that he informed potential customers of tax fees for each hobby craft item sold at the prison rodeo is not the [pjenological reason that he was transferred from LSP. [Turner] was transferred for status reduction, not for engaging in any speech.” This might be evidence that contravenes the last three elements of Turner’s retaliation claim, viz., that Cain did not intend to restrict Turner’s speech by transferring him, that the transfer did not restrict his speech, or that, even if did, Cain did not cause his speech to be restricted. But it is not evidence that contravenes the first element, viz., that Cain was ‘permitted to restrict some, but not all, of Turner’s speech at the Rodeo. In the absence of any justification by Cain, rather than producing evidence of a legitimate penological interest, Cain has “presented nothing but a cloud of ink.”[25] Without more, this “will not suffice to defer [a determination]” on summary judgment,[26] This is enough for Turner to prevail on the first element of his claim.
II.
Even if Warden Cain had met his burden of producing evidence of an interest in restricting Turner’s speech, such an interest would not have permitted him to prohibit Turner from speaking about the taxes included in his prices while otherwise allowing him to speak about those prices generally. Turner’s speech is plainly protected from such a nonneutral limitation, regardless of Warden Cain’s interest. “[T]he First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.”[27] Likewise, “[t]he government may not [restrict or allow speech] based on hostility — or favoritism — towards the underlying message expressed.”[28] Such restrictions “are presumptively invalid.”[29] Even in a nonpublic forum, a regulation or action restricting speech is not reasonable if it is “an effort to suppress [the speech] merely because officials oppose the speaker’s view.”[30]
Turner itself incorporates this. It states that “the governmental objective must be a legitimate and neutral one.”[31] It explains, too, that it is “important to inquire whether prison regulations [or actions] restricting inmates’ First Amendment rights operated in a neutral fashion, *369 without regard to the content of the expression.” [32] “When ... the question involves the entry of people into the prisons for face-to-face communication with inmates, it is obvious that institutional considerations, such as security and related administrative problems, as well as the accepted and legitimate policy objectives of the corrections system itself, require that some limitation be placed on such visitations.”[33] Even so, “prison officials must be accorded latitude” in imposing such limitations only when “no discrimination in terms of content is involved.”[34] “So long as [a] restriction operates in a neutral fashion, without regard to the content of the expression, it ... does not abridge any First Amendment freedoms retained by prison inmates.”[35] Thus, even if Warden Cain had a reason for nonneutrally allowing Turner’s speech about the prices of his hobby craft while simultaneously prohibiting his speech about the taxes included in those prices, such a reason would not have allowed Warden Cain to restrict Turner’s speech under Turner. Turner must prevail on the first element for this reason as well.
III.
Admittedly, the fact that Turner is entitled to prevail on this first element of his retaliation claim does not mean that he will necessarily prevail on the remaining elements. Warden Cain might well have produced evidence sufficient to create genuine issues of material fact that preclude summary judgment. It will be up to the finder of fact to sort all that out. But, in contrast, this first element presents only an issue of law. As such, we are not bound by what the district court did or did not do.
Despite our obligation to engage in this inquiry — and our attendant obligation to review “summary judgments de novo ”[36]— the majority skirts it entirely, instead remanding “for the district court to make this determination.” I respectfully disagree with this approach. Regardless of how unusual the facts may be, the law is clear. We should hold that Turner has satisfied the first element of his claim by proving that his speech at the Rodeo regarding the prices of his wares including the element of the taxes was protected. I am comforted by the belief that the district court will so hold on remand.

. Connick v. Myers, 461 U.S. 138, 148 n. 7, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); see Stewart v. Parish of Jefferson, 951 F.2d 681, 683 (5th Cir.1992).

. Pennekamp v. Fla., 328 U.S. 331, 335, 66 S.Ct. 1029, 90 L.Ed. 1295 (1946); see Connick, 461 U.S. at 150 n, 10, 103 S.Ct. 1684; Rankin v. McPherson, 483 U.S. 378, 384, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987); see also Bose Corp. v. Consumers Union of U.S., Inc., 466 U.S. 485, 499, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984) ("[I]n cases raising First Amendment issues we have repeatedly held that an appellate court has an obligation to ‘make an independent examination of the whole record’ in order to make sure that 'the judgment does not constitute a forbidden intrusion on the field of free expression.’ ”) (quoting New York Times Co. v. Sullivan, 376 U.S. 254, 285, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)).

. See U.S. Const, amend. I ("Congress shall make no law ... abridging the freedom of speech-”).This includes both "fully protected” speech (for example, political in content) and even "proscribeable” speech (for example, obscene in content). Although pro-scribable speech is generally unprotected if the government restricts it neutrally, it may be protected if it restricts it nonneutrally. See R.A.V. v. City of St. Paul, Minn., 505 U.S. 377, 383-84, 387, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992) ("We have sometimes said that these categories of expression are not within the area of constitutionally protected speech or that the protection of the First Amendment does not extend to them.... What [we] mean is that these areas of speech can, consistently with the First Amendment, be regulated because of their constitutionally proscribable content (obscenity, defamation, etc.) — not that they are categories of speech entirely invisible to the Constitution, so that they may be made the vehicles for content discrimination unrelated to their distinctively proscribable content.” (citations omitted) (internal quotation marks omitted)).

. Beard v. Banks, 548 U.S. 521, 528, 126 S.Ct. 2572, 165 L.Ed.2d 697 (2006) (plurality opinion) (citing Turner v. Safley, 482 U.S. 78, 93, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)) (emphasis added).

. See Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503, 511, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) (“Clearly, the prohibition of expression of one particular opinion, at least without evidence [of an interest in doing so], is not constitutionally permissible.”).

. See Connick, 461 U.S. at 147, 103 S.Ct. 1684 (“We in no sense suggest that speech on private matters falls into one of the narrow and well-defined classes of expression which carries so little social value, such as obscenity, that the State can prohibit and punish such expression by all persons in its jurisdiction.”).

. Turner, 482 U.S. at 89, 107 S.Ct. 2254.

. Connick, 461 U.S. at 150 & n. 10, 103 S.Ct. 1684.

. Overton v. Bazzetta, 539 U.S. 126, 132, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003) ("The burden [of persuasion] ... is not on the [prison officials] to prove the validity of [the restriction on a prisoner’s speech] but on the prisoner to disprove it.”); see Beard, 548 U.S. at 529, 126 S.Ct. 2572 (plurality opinion).

. See Bayle v. Allstate Ins. Co., 615 F.3d 350, 359 (5th Cir.2010). The Supreme Court has "consistently distinguished between burden of proof, which [it has] defined as burden of persuasion, and an alternative concept, which [it has] referred to as the burden of production or the burden of going forward with the evidence.” OWCP v. Greenwich Collieries, 512 U.S. 267, 274, 114 S.Ct. 2251, 129 L.Ed.2d 221 (1994).

. Burden of Persuasion, Black’s Law Dictionary (10th ed.2014).

. Burden of Production, Black’s Law Dictionary.

. Bayle, 615 F.3d at 359 (emphasis added).

. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (”[T]he inquiry under [Rule 56] is ... whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.”).

. Turner, 482 U.S. at 89, 107 S.Ct. 2254 ("[A] legitimate governmental interest [must be] put forward to justify [the restriction].”); see Mayfield v. Tex. Dep't of Criminal Justice, 529 F.3d 599, 612 (5th Cir.2008) (quoting Turner, 482 U.S. at 89, 107 S.Ct. 2254); Victoria W. v. Larpenter, 369 F.3d 475, 484 (5th Cir.2004); Mays v. Springborn, 575 F.3d 643, 647 (7th Cir.2009) ("When a prison impedes an inmate’s [speech] ... it must present a legitimate penological reason for doing so. But ... the prison [does not] bear[ ] the burden of proving that its penological reason is legitimate. Once the prison gave its explanation for denying the supplements, the burden shift[s] to [the prisoner] to present evidence to call that explanation into question.” (citations omitted)).

. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

. Id. at 323-24, 106 S.Ct. 2548 (emphasis added).

. Shields v. Twiss, 389 F.3d 142, 149 (5th Cir.2004) (quoting Byers v. Dallas Morning News, Inc., 209 F.3d 419, 424 (5th Cir.2000)); see Cuadra v. Houston Indep. Sch. Dist., 626 F.3d 808, 812 (5th Cir.2010).

. Celotex Corp., 477 U.S. at 325, 106 S.Ct. 2548.

. Grounds for Summary Judgment—Burden of Proof and Presumptions, 10A Fed. Prac. & Proc. Civ. § 2727 (3d ed.); see Bayle, 615 F.3d at 359; Shields, 389 F.3d at 149 (quoting Fed.R.Civ.P. 56(e)).

. Beard, 548 U.S. at 535, 126 S.Ct. 2572.

. Id.; Rudolph v. Locke, 594 F.2d 1076, 1077 (5th Cir.1979); Canady v. Thaler, 61 Fed.Appx. 917 (5th Cir.2003) (unpublished) ("There is no competent summary judgment evidence establishing that the [restriction] ... is reasonably related to a legitimate penological purpose. Therefore, on the face of the record [the prisoner] has alleged a constitutional violation.” (citations omitted)); Storseth v. Spellman, 654 F.2d 1349, 1355 (9th Cir.1981) ("We agree with those courts that require specific evidence or at least an explanation of the purpose of the policy to justify a restriction on First Amendment rights.” (citations omitted)).

. Rudolph, 594 F.2d at 1077.

. Fed.R.Civ.P. 56(e); see Stauffer v. Gearhart, 741 F.3d 574, 581 (5th Cir.2014) ("If a motion for summary judgment is properly supported, the opposing party may not rely merely on allegations or denials in its own pleadings, but must, in its response, set out specific facts showing a genuine factual dispute for trial.”).

. Golden Oil Co. v. Exxon Co., U.S. A., 543 F.2d 548, 551 (5th Cir.1976).

. Id.

. Ashcroft v. ACLU, 535 U.S. 564, 573, 122 S.Ct. 1700, 152 L.Ed.2d 771 (2002). (quoting Bolger v. Youngs Drug Prods. Corp., 463 U.S. 60, 65, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983)).

. R.A.V., 505 U.S. at 386, 112 S.Ct. 2538.

. Id. at 382, 112 S.Ct. 2538.

. Bd. of Airport Comm'rs of City of Los Angeles v. Jews for Jesus, Inc., 482 U.S. 569, 573, 107 S.Ct. 2568, 96 L.Ed.2d 500 (1987) (quoting Perry Ed. Assn. v. Perry Local Educators’ Assn., 460 U.S. 37, 46, 103 S.Ct. 948, 74 L,Ed.2d 794 (1983)); see Connick, 461 U.S. at 147, 103 S.Ct. 1684 ("We in no sense suggest that speech on private matters falls into one of the narrow and well-defined classes of expression which carries so little social value, such as obscenity, that the State can prohibit and punish such expression by all persons in its jurisdiction.").

. Turner, 482 U.S. at 90, 107 S.Ct. 2254 (emphasis added).

. Id. (emphasis added) (citing Pell v. Procunier, 417 U.S. 817, 828, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974) ("So long as this restriction operates in a neutral fashion, without regard to the content of the expression, it falls within the ‘appropriate rules and regulations’ to which ‘prisoners necessarily are subject,’ and does not abridge any First Amendment freedoms retained by prison inmates.” (citation omitted))).

. Pell, 417 U.S. at 826, 94 S.Ct. 2800.

. Id. (internal quotation marks omitted) (emphasis added).

. Id. at 828, 94 S.Ct. 2800 (citation and internal quotation marks omitted).

. Shields, 389 F.3d at 149.