# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-30205

United States Court of Appeals
Fifth Circuit

**FILED**

April 28, 2016

Lyle W. Cayce
Clerk

CARLWYNN J. TURNER,

Plaintiff - Appellant

v.

N. BURL CAIN; DARREL VANNOY; LESLIE DUPONT,

Defendants - Appellees

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:12-CV-598

Before JONES, WIENER, and HIGGINSON, Circuit Judges.

EDITH H. JONES, Circuit Judge:*

In 2012, Plaintiff-Appellant Carlwynn J. Turner, a prisoner at the Louisiana Department of Corrections ("LDOC"), brought this pro se civil rights action against Defendant-Appellees N. Burl Cain, warden of the Louisiana State Penitentiary (hereinafter "LSP" and colloquially "Angola"), as well as his subordinates, David Vannoy, a deputy warden, and Leslie Dupont, an assistant warden. Turner alleged that Warden Cain, Vannoy, and Dupont

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-30205

transferred him from the LSP after he exercised his First Amendment right of free speech. This case involves a novel prisoner free speech claim that is inadequately discussed in the district court. We affirm in part, reverse in part, and remand.

## I.
## Facts & Proceedings

The events giving rise to Turner's claim began on April 16, 2011, while he was selling crafts to members of the public attending the Angola Prison Rodeo. As several potential buyers negotiated with Turner, he told them that it would be impracticable for him to accept the prices they were offering. Specifically, he remarked that Warden Cain imposed "taxes" on each item he sold. Turner describes the exchange as follows:

> [H]e explained to the people standing around his hobby craft booth that he could not reduce his hobby craft prices because Warden Cain takes 18% . . . from individual cash sales . . . and 22% . . . from individual credit card sales. [He] shared this information with the public because it affected his hobby craft business. The times he sold and how he sold them determined the worth and profit of his business. It either caused him to make a profit or loose [sic] a profit. To reduce his prices would subject him to more of a profit lost than a profit gain. Mainly because of what it cost to make a product, and the percentage that is taken from the sale of it. He explained his prices and position to settle the mind of the customer, and he wanted to make it clear that he was not being mean, he was just doing business in the free market.

Such taxes were, in fact, imposed by Warden Cain.[1]

---

[1] According to Warden Cain himself, "taxes were raised for the following reasons: . . . 11% tax is used to rebuild, maintain, or add new [hobby craft facilities,] . . . 9% [Feliciana] Parish tax . . . , 2-3% taxes [sic] were charged by [c]redit [c]ard [c]ompanies . . . ."

No. 14-30205

Turner alleges that Dupont's wife overheard Turner's remarks about the taxes and repeated them to Dupont. He further alleges that, later that day, Dupont removed Turner from the Rodeo grounds, telling Turner that "his wife . . . informed him that [Turner] was telling the people about the inmates being taxed a percentage from the sale of their hobby craft," and that, "in anger, [Dupont] vehemently" prohibited Turner from returning to the Rodeo grounds to sell crafts.

Turner also alleges that he "was never informed by . . . Cain during the '[R]odeo prep meetings' that inmates were not allowed to talk about the tax percentages with the public" and that "there w[ere] no written policies or posted memorandums that informed inmates [who] sold hobby craft [that] they could not tell potential customers about the 18% and 22% tax inmates pay upon the sale of their hobby craft." In other words, he alleges that he "had no knowledge that if he shared the tax information with [members of the] public he would be punished for doing so." There is nothing in the record that suggests any restrictions on his speech existed.

Turner then alleges that Dupont did not even "write a disciplinary report . . . charging [Turner] with any rule violations." Despite the absence of any prior restraint on his speech, he was added to a list of 15-or-so "Inmates That [H]ad Rodeo Violations." The list indicated that he had "Bribe[d] the Public"[2] (and that most of the others had "G[iven] Interview[s] To Media" or "Failed Drug Test[s]").

---

The parties do not seem to dispute that these taxes were levied against the seller, not the buyer.

[2] Although prison regulations presumably prohibit such conduct, neither party asserts that is what actually took place.

3

Turner also alleges that, two days after he was removed from the Rodeo, Dupont met with Warden Cain about each of the violations that had occurred during the Rodeo and that, ten days after that, Warden Cain had transferred Turner and most, if not all, of the other prisoners on Dupont's list from LSP to other LDOC facilities. Turner avers that, as they were being transferred, Vannoy "met with [them at the gate] and said that . . . Warden Cain don't want to talk to any of you[;] he is angry and displeased with your behavior during the [R]odeo because you did whatever it was you did, he has decided to transfer you." Turner was transferred to Hunt Correctional Center, where he spent approximately 59 days, before being transferred again, this time to David Wade Correctional Center.

Turner brought this action, asserting claims against Warden Cain, Dupont, and Vannoy in their official and individual capacities. He alleges specifically that they violated his First Amendment rights by retaliating against him for exercising his right to free speech at the Rodeo. Turner next alleges that, as a result of that retaliation, he (1) suffered a number of hardships as a result of the transfers, (2) lost his lucrative job, (3) was separated from some of his belongings, and (4) remains isolated from his friends and family. He seeks compensatory and punitive damages.

Warden Cain, Vannoy, and Dupont moved to dismiss the claims under Fed. R. Civ. P. 12(b), asserting that Turner had failed to state a claim and that they were entitled to Eleventh Amendment immunity and qualified immunity. The magistrate judge recommended that the district court dismiss the claims except for that against Warden Cain in his individual capacity. The district court adopted the magistrate judge's recommendations over Turner's objections. The action proceeded and, in due course, Turner and Warden Cain each moved for summary judgment under Fed. R. Civ. P. 56. The magistrate

No. 14-30205

judge recommended that the district court dismiss Turner's remaining claim, again over Turner's objections. Turner has timely appealed.[3]

## II.
## DISCUSSION

On appeal, Turner challenges both the dismissal and the adverse summary judgment. He alleges that the LSP officials retaliated against him for his discourse with members of the public.[4] "To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the [prison official's] intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation."[5] The "retaliatory adverse act" must be "more than *de minimis* retaliation."[6]

### A.    Motion to Dismiss

Turner alleges that Dupont and Vannoy retaliated against him for his remarks regarding the taxes imposed by Warden Cain. We review *de novo* an order granting a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).[7] "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

---

[3] This court granted Turner leave to proceed *in forma pauperis* and ordered the parties to submit briefs. Neither Dupont nor Vannoy filed appellee briefs, but this does not affect their interests, only their ability to participate in oral argument. Fed R. App. P. 31(c).

[4] The district court correctly construed Turner's complaint as containing both official capacity and individual capacity claims against the defendants and dismissed each of the official capacity claims under Rule 12(b). Because Turner now suggests that he only intended to bring individual capacity claims against them, he has waived any challenge to the district court's disposition of his official capacity claims.

[5] *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006) (quoting *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998)).

[6] *Id.* at 684–85.

[7] *Lampton v. Diaz*, 639 F.3d 223, 225 (5th Cir. 2011).

5

No. 14-30205

accepted as true, 'to state a claim to relief that is plausible on its face.'"[8]  We consider the complaint "in the light most favorable to the nonmoving party," because motions to dismiss under Rule 12(b)(6) are "'viewed with disfavor and [are] rarely granted.'"[9]

The district court adopted the magistrate judge's determination that the retaliatory act was the transfer itself.  If properly alleged, such an act exceeds the *de minimus* threshold because, even though a prisoner has no constitutional right to be housed in a particular institution,[10] an otherwise permissible act may nonetheless violate the constitutional rights of a prisoner if ordered in retaliation for the exercise of those rights.[11]  Turner alleges that Dupont was involved with or caused the transfer by telling Warden Cain about Turner's remarks and that Vannoy was involved with or caused the transfer because he told Turner and the other prisoners that the transfer was retaliatory.  But what Turner alleges, taken as true, does not establish this. He merely alleges that Dupont provided the information on which Warden Cain made his decision and that Vannoy was aware of that decision.  From Turner's allegations, it appears that the decision to transfer him was Warden Cain's alone.  Accordingly, the district court did not err in determining that Turner had not stated a claim of retaliation against Dupont and Vannoy for the transfer itself.

---

[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

[9] *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (quoting *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011)).

[10] *Meachum v. Fano*, 427 U.S. 215, 225 (1976).

[11] *See Morris*, 449 F.3d at 685–87.

6

However, Turner sufficiently alleges that DuPont was involved in his removal from the Rodeo grounds, which constituted a retaliatory act for his "speech" about Warden Cain's taxes. He makes this clear both in his complaint and in in his objections to the magistrate judge's recommendation that the district court grant the LSP officials' motion to dismiss. As Turner is proceeding *pro se*, the complaint and objections are "to be liberally construed."[12] Further, the act of removing Turner from the Rodeo grounds meets the *de minimus* threshold.[13] This was not a mere reassignment of prison jobs. It was the denial of Turner's opportunity to sell his crafts, to profit from those sales, and to interact with members of the public.[14] It also disrupted his longstanding record of good behavior at the LSP. Turner also alleges that he would not have mentioned the taxes if he had known that doing so would result in his removal from the Rodeo grounds.

It is also apparent from Turner's allegations that the restriction on his speech—if made known to him in advance—would have deterred a person of ordinary firmness from speaking. Consequently, the district court erred in dismissing Turner's claim of retaliation against Dupont for the removal.

## B.    Motion for Summary Judgment

We review *de novo* an order granting a motion for summary judgment pursuant to Rule 56. "Summary judgment is appropriate if the record demonstrates 'that there is no genuine dispute as to any material fact and that

---

[12] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted).

[13] *Morris*, 449 F.3d at 687.

[14] An article about the Rodeo in *Corrections Today* explains: "[H]obby shop privileges are highly valued at the prison, which hosts annual events featuring the selling of inmate arts and crafts. These events have been hugely successful and inmate hobby crafters can make significant amounts of revenue from their participation." Cathy Fontenot, *Managing Angola's Long-Term Inmates*, CORRECTIONS TODAY 119 (Aug. 2001).

No. 14-30205

the movant is entitled to judgment as a matter of law.'"[15]  "A genuine issue of material fact exists if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party."[16]  "When considering a motion for summary judgment, [we] construe the evidence and draw all reasonable inferences in the light most favorable to the non-moving party."[17]

The district court determined that there was no genuine issue of material fact because Turner had failed to establish that he was exercising or attempting to exercise a specific constitutional right when he commented on the taxes.  The district court characterized Turner's remarks as a grievance directed at LSP officials.  It explained, based on our opinion in *Freeman v. Texas Dep't of Criminal Justice*,[18] that Turner, as a prisoner, retained a right of free speech only to the extent he exercised that right in a manner consistent with his status as a prisoner.  Because Turner had not raised the "grievance" in these administrative channels, his speech was not protected.[19]

Critical to this determination are (a) whether Turner's speech was protected and (b) whether the LSP officials could restrict it.  Warden Cain suggests that Turner had "no rights [*sic*] to participate in [the] Rodeo simply because it is a privilege afforded to him and not a Constitutional right."  This misses the point.  Turner does not contend that he had a right to participate in

---

[15] Fed. R. Civ. P. 56(a).

[16] *Harris v. Serpas*, 745 F.3d 767, 771 (5th Cir. 2014) (quoting *Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv. Corp., Inc.*, 292 F.3d 471, 478 (5th Cir. 2002)), *cert. denied*, 135 S. Ct. 137 (2014).

[17] *See Kitchen v. Dallas Cty., Tex.*, 759 F.3d 468, 476 (5th Cir. 2014).

[18] 369 F.3d 854, 864 (5th Cir. 2004).

[19] The court did not rule on any other issues raised by the parties on summary judgment, and we likewise do not opine on them.

the craft sale at the Rodeo or that the prison officials impinged such a right. By participating with their permission, Turner was entitled to speak with the public during the event and was expected to do so. Turner insists that, once he was allowed to speak with the public, the prison officials could not limit his speech without justification.

The district court determined that the content of Turner's speech was a grievance and, because he spoke in a prison and as a prisoner, the speech was unprotected if expressed outside the grievance procedures. This classification of Turner's speech, however, is not supported by the record. Turner's speech was not a grievance because it had nothing to do with his status as a prisoner. Turner made his remarks in an effort to explain that, because of the taxes, he could not reduce the price of his crafts. Significantly, Turner was addressing the public, not a prison official or another prisoner.[20] As far as we can tell, none of the justifications for restricting a prisoner's speech to a grievance procedure is present. There is nothing to suggest that Turner's remarks to the public had the potential for inciting violence, disturbing order in the prison, or creating security concerns. He was there because prison officials had permitted him to engage in a public event attended by large numbers of the public on prison grounds. Under these circumstances, Turner's speech, was not in the form of a grievance, and may not have been inconsistent with his status as a prisoner. Given that Turner's speech was not a grievance, LSP officials could not restrict his speech based on the LSP grievance procedure.

Whether there is any other justification for sanctioning Turner's speech, we cannot say; the law, as well as the surrounding circumstances, requires more careful exegesis. Undoubtedly, "a prison inmate retains those First

---

[20] Turner asserts he did not know he was speaking to the spouse of an LSP official.

Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."[21] However, "when a prison regulation [or action] impinges on inmates' constitutional rights, the regulation [or action] is valid if it is reasonably related to legitimate penological interests."[22]    Because the district court incorrectly labeled Turner's speech a grievance, we remand for the district court to consider whether his speech was otherwise consistent with "legitimate penological interests."   The Supreme Court in *Turner* identified a number of considerations relevant to this determination:   "whether a 'valid, rational connection' exists between the regulation and the legitimate interest put forth to justify it; whether 'alternative means of exercising the right . . . remain open to prison inmates'; 'the impact accommodation of the asserted constitutional right' will have on prison officials and inmates; and the availability of 'obvious, easy alternatives' to the challenged regulation."[23]   The district court should consult these factors and determine whether the defendants could have limited Turner's speech.

This determination will inform whether Turner's speech was protected—or not—under the First Amendment.   We remand for the district court to make this determination.   To facilitate the inquiry, the court should appoint counsel for Turner.   The court should also bear in mind that Cain offered in his summary judgment motion only a general justification for his

---

[21] *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *see also Freeman*, 369 F.3d at 863.

[22] *Turner v. Safley*, 482 U.S. 78, 89 (1987).

[23] *Watkins v. Kaspar*, 599 F.3d 791, 796–97 (7th Cir. 2010) (alteration in original) (quoting *Turner*, 482 U.S. at 89–90).

No. 14-30205

contention that the speech was unprotected.   We opine no further on the facts and issues that the court will confront on remand.

## CONCLUSION

For the foregoing reasons, the district court's judgment dismissing Vannoy is **AFFIRMED**; the judgments dismissing DuPont and granting summary judgment to Warden Cain are **REVERSED** and **REMANDED** for further proceedings consistent herewith, including appointment of counsel for Turner.

No. 14-30205

WIENER, Circuit Judge, concurring:

I concur entirely in the majority's holding that Turner's speech was not a "grievance" and therefore not *per se* unprotected merely because it might have been made outside the LSP's grievance process. Yet, I would go further: Rather than remanding for the district court to consider whether Turner's speech might be unprotected because Warden Cain had some other legitimate penological reason for restricting it, I would hold that it is protected because there is no evidence of such a reason—nor could there be.

To begin with, the *first* element of a prisoner's retaliation claim, *viz.*, whether prison officials *may have* restricted a prisoner's speech, rendering it "unprotected," is separate and distinct from the *second*, *third*, and *fourth* elements, *viz.*, whether prison officials *intended to* restrict that speech, whether the speech *was* restricted through some regulation or action, and whether the prison officials *caused* the regulation or action restricting the speech. Common sense dictates that we must not read the second, third, and fourth elements into the first. Just because Warden Cain would not have been *permitted to* restrict Turner's speech, rendering it protected, does not mean that he *intended to* restrict it, that it *was* restricted, or that he *caused* it to be restricted. Likewise, the existence of genuine issues of material fact as to the second, third, and fourth elements do not necessarily preclude resolution of the first.

This "inquiry into the protected status of speech is one of law, not fact."[1] Regardless of what actually happened, Turner's speech is either "protected" or it is not. On appeal, "we are compelled to examine for ourselves the statements

---

[1] *Connick v. Myers*, 461 U.S. 138, 148 n.7 (1983); *see Stewart v. Parish of Jefferson*, 951 F.2d 681, 683 (5th Cir. 1992).

12

in issue and the circumstances under which they were made to see . . . whether they are . . . protect[ed]."[2]

To begin with, speech is "protected" when the government is not permitted to restrict it.[3] Even "imprisonment does not *automatically* deprive a prisoner of some important constitutional protections, including those of the First Amendment."[4] Instead, a prisoner's speech—like all speech—is presumed to be protected,[5] irrespective of its content.[6]  For "a prison regulation [or action]" to render such speech unprotected, *Turner v. Safley* requires that it be

---

[2] *Pennekamp v. Fla.*, 328 U.S. 331, 335 (1946); *see Connick*, 461 U.S. at 150 n.10; *Rankin v. McPherson*, 483 U.S. 378, 384 (1987); *see also Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 499 (1984) ("[I]n cases raising First Amendment issues we have repeatedly held that an appellate court has an obligation to 'make an independent examination of the whole record' in order to make sure that 'the judgment does not constitute a forbidden intrusion on the field of free expression.'") (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 285 (1964)).

[3] *See* U.S. CONST. amend. I ("Congress shall make no law . . . abridging the freedom of speech . . . .").This includes both "fully protected" speech (for example, political in content) and even "proscribeable" speech (for example, obscene in content). Although proscribable speech is generally unprotected if the government restricts it neutrally, it may be protected if it restricts it nonneutrally. *See R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 383-84, 387 (1992) ("We have sometimes said that these categories of expression are not within the area of constitutionally protected speech or that the protection of the First Amendment does not extend to them. . . . What [we] mean is that these areas of speech can, consistently with the First Amendment, be regulated *because of their constitutionally proscribable content* (obscenity, defamation, etc.)—not that they are categories of speech entirely invisible to the Constitution, so that they may be made the vehicles for content discrimination unrelated to their distinctively proscribable content." (citations omitted) (internal quotation marks omitted)).

[4] *Beard v. Banks*, 548 U.S. 521, 528 (2006) (plurality opinion) (citing *Turner v. Safley*, 482 U.S. 78, 93 (1987)) (emphasis added).

[5] *See Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 511 (1969) ("Clearly, the prohibition of expression of one particular opinion, at least without evidence [of an interest in doing so], is not constitutionally permissible.").

[6] *See Connick*, 461 U.S. at 147 ("We in no sense suggest that speech on private matters falls into one of the narrow and well-defined classes of expression which carries so little social value, such as obscenity, that the State can prohibit and punish such expression by all persons in its jurisdiction.").

13

No. 14-30205

"reasonably related to legitimate penological interests."[7] This mandates balancing the prisoner's interest in his right to speech against the prison officials' interest in restricting that right. In so doing, we "must reach the most appropriate possible balance of the competing interests," even when, as here, the "particularized balancing is difficult."[8] Turner is entitled to judgment on this first element of his claim because (1) there is no evidence of any interest that would have permitted Warden Cain to restrict Turner's speech regarding the taxes and (2) even if there were, such an interest is insufficient to satisfy *Turner* when speech is restricted nonneutrally.

## I.

Although Turner has the burden of *persuasion* (or *proof*) as to each element of his claim on summary judgment,[9] he does not necessarily have the burden of *production*. [10] The burden of *persuasion*, which is "[a] party's duty to convince the fact-finder,"[11] is distinct from the burden of *production*, which is "[a] party's duty to introduce enough evidence on an issue to have the issue decided by the fact-finder, rather than decided against the party . . . [on] summary judgment."[12]

---

[7] *Turner*, 482 U.S. at 89.

[8] *Connick*, 461 U.S. at 150 & n.10.

[9] *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) ("The burden [of persuasion] . . . is not on the [prison officials] to prove the validity of [the restriction on a prisoner's speech] but on the prisoner to disprove it."); *see Beard*, 548 U.S. at 529 (plurality opinion).

[10] *See Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 359 (5th Cir. 2010). The Supreme Court has "consistently distinguished between burden of proof, which [it has] defined as burden of persuasion, and an alternative concept, which [it has] referred to as the burden of production or the burden of going forward with the evidence." *OWCP v. Greenwich Collieries*, 512 U.S. 267, 274 (1994).

[11] *Burden of Persuasion*, BLACK'S LAW DICTIONARY (10th ed. 2014).

[12] *Burden of Production*, BLACK'S LAW DICTIONARY.

14

Because Turner "has the ultimate burden of *persuasion*," he also has "the burden of *producing* evidence to make out a '*prima facie*' case."[13] Stated differently, he must produce evidence that, if uncontested, would be enough to entitle him to judgment on each element.[14] If he does not, he will be denied summary judgment. Here, that means Turner must produce evidence that, if uncontested, would prove that his speech was protected. He does not, however, have the only burden of production as to this element.

Even though Turner has the burden of *producing* evidence that, if uncontested, would prove his speech was protected, Warden Cain has the burden of *producing*—or "put[ting] forward"—evidence of a legitimate penological interest in restricting Turner's speech.[15] This is Warden Cain's burden of production, not Turner's, because there is "no express or implied requirement in Rule 56" that Turner produce evidence negating Warden Cain's case.[16] Notably, "[o]ne of the principal purposes of [Rule 56] is to isolate and dispose of factually unsupported . . . *defenses*, and . . . it should be interpreted

---

[13] *Bayle*, 615 F.3d at 359 (emphasis added).

[14] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986) ("[T]he inquiry under [Rule 56] is . . . whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.").

[15] *Turner*, 482 U.S. at 89 ("[A] legitimate governmental interest [must be] put forward to justify [the restriction]."); *see Mayfield v. Tex. Dep't of Criminal Justice*, 529 F.3d 599, 612 (5th Cir. 2008) (quoting *Turner*, 482 U.S. at 89); *Victoria W. v. Larpenter*, 369 F.3d 475, 484 (5th Cir. 2004); *Mays v. Springborn*, 575 F.3d 643, 647 (7th Cir. 2009) ("When a prison impedes an inmate's [speech] . . . it must present a legitimate penological reason for doing so. But . . . the prison [does not] bear[ ] the burden of proving that its penological reason is legitimate. Once the prison gave its explanation for denying the supplements, the burden shift[s] to [the prisoner] to present evidence to call that explanation into question." (citations omitted)).

[16] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

15

in a way that allows it to accomplish this purpose."[17] Because this "burden of *production* at trial ultimately rests on [Warden Cain], '[Turner] must merely demonstrate an absence of evidentiary support in the record for [Warden Cain]'s case.'"[18] This is sufficient to discharge Turner's burden of production as to the first element.[19]

I am satisfied that Turner has met his burden of production because, as noted, Turner's speech is presumptively protected and he has identified an absence of evidence regarding a legitimate penological interest that would have permitted Warden Cain to restrict his speech regarding the effect of the taxes on his prices while allowing his speech on the prices generally.

As Turner has "ma[de] out a *prima facie* case that would entitle him to a judgment as a matter of law if uncontroverted at trial, summary judgment will be granted [in favor of Turner] unless [Warden Cain] offers some competent evidence that . . . there is a genuine issue as to a material fact."[20] Because he does not also have the ultimate burden of persuasion, Warden Cain's burden of production is less than Turner's. To meet it, he must "respond[ ] adequately through [evidence] to the allegations in [Turner's] complaint."[21] He must provide evidence that "show[s] more than a formalistic logical connection

---

[17] *Id.* at 323-24 (emphasis added).

[18] *Shields v. Twiss*, 389 F.3d 142, 149 (5th Cir. 2004) (quoting *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000)); *see Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010).

[19] *Celotex Corp.*, 477 U.S. at 325.

[20] *Grounds for Summary Judgment—Burden of Proof and Presumptions*, 10A FED. PRAC. & PROC. CIV. § 2727 (3d ed.); *see Bayle*, 615 F.3d at 359; *Shields*, 389 F.3d at 149 (quoting FED. R. CIV. P. 56(e)).

[21] *Beard*, 548 U.S. at 535.

between [the limitation] and a penological objective."[22] A "bare assertion . . . is not enough"—Warden Cain "must adduce specific evidence to support that assertion."[23] As Rule 56 makes clear, if Warden Cain "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion" and may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."[24]

It is undisputed that Cain has not produced evidence of *any* legitimate penological interest that would have permitted him to restrict some, but not all, of Turner's speech at the Rodeo, much less an interest that would pass muster under *Turner*. Instead, Warden Cain only produced evidence of an interest in transferring Turner, stating: "[Turner's] allegations that he informed potential customers of tax fees for each hobby craft item sold at the prison rodeo is not the [p]enological reason that he was transferred from LSP. [Turner] was transferred for status reduction, not for engaging in any speech." This might be evidence that contravenes the last three elements of Turner's

---

[22] *Id.*; *Rudolph v. Locke*, 594 F.2d 1076, 1077 (5th Cir. 1979); *Canady v. Thaler*, 61 F. App'x 917 (5th Cir. 2003) (unpublished) ("There is no competent summary judgment evidence establishing that the [restriction] . . . is reasonably related to a legitimate penological purpose. Therefore, on the face of the record [the prisoner] has alleged a constitutional violation." (citations omitted)); *Storseth v. Spellman*, 654 F.2d 1349, 1355 (9th Cir. 1981) ("We agree with those courts that require specific evidence or at least an explanation of the purpose of the policy to justify a restriction on First Amendment rights." (citations omitted)).

[23] *Rudolph*, 594 F.2d at 1077.

[24] FED. R. CIV. P. 56(e); *see Stauffer v. Gearhart*, 741 F.3d 574, 581 (5th Cir. 2014) ("If a motion for summary judgment is properly supported, the opposing party may not rely merely on allegations or denials in its own pleadings, but must, in its response, set out specific facts showing a genuine factual dispute for trial.").

retaliation claim, *viz.*, that Cain *did not intend to* restrict Turner's speech by transferring him, that the transfer *did not* restrict his speech, or that, even if did, Cain *did not cause* his speech to be restricted. But it is not evidence that contravenes the first element, *viz.*, that Cain *was permitted to* restrict some, but not all, of Turner's speech at the Rodeo. In the absence of *any* justification by Cain, rather than producing evidence of a legitimate penological interest, Cain has "presented nothing but a cloud of ink."[25] Without more, this "will not suffice to defer [a determination]" on summary judgment.[26] This is enough for Turner to prevail on the first element of his claim.

## II.

Even if Warden Cain had met his burden of producing evidence of an interest in restricting Turner's speech, such an interest would not have permitted him to prohibit Turner from speaking about the taxes included in his prices while otherwise allowing him to speak about those prices generally. Turner's speech is plainly protected from such a nonneutral limitation, regardless of Warden Cain's interest. "[T]he First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content."[27] Likewise, "[t]he government may not [restrict or allow speech] based on hostility—or favoritism—towards the underlying message expressed."[28] Such restrictions "are presumptively invalid."[29] Even in a nonpublic forum, a regulation or action restricting speech

---

[25] *Golden Oil Co. v. Exxon Co., U. S. A.*, 543 F.2d 548, 551 (5th Cir. 1976).

[26] *Id.*

[27] *Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002) (quoting *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 65 (1983)).

[28] *R.A.V.*, 505 U.S. at 386.

[29] *Id.* at 382.

18

is not reasonable if it is "an effort to suppress [the speech] merely because officials oppose the speaker's view."[30]

*Turner* itself incorporates this. It states that "the governmental objective must be a legitimate and *neutral* one."[31] It explains, too, that it is "important to inquire whether prison regulations [or actions] restricting inmates' First Amendment rights operated in a *neutral* fashion, without regard to the content of the expression."[32] "When . . . the question involves the entry of people into the prisons for face-to-face communication with inmates, it is obvious that institutional considerations, such as security and related administrative problems, as well as the accepted and legitimate policy objectives of the corrections system itself, require that some limitation be placed on such visitations."[33] Even so, "prison officials must be accorded latitude" in imposing such limitations only when *"no discrimination in terms of content is involved."*[34] "So long as [a] restriction operates in a *neutral* fashion, without regard to the content of the expression, it . . . does not abridge any First Amendment

---

[30] *Bd. of Airport Comm'rs of City of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569, 573 (1987) (quoting *Perry Ed. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 46 (1983)); *see Connick,* 461 U.S. at 147 ("We in no sense suggest that speech on private matters falls into one of the narrow and well-defined classes of expression which carries so little social value, such as obscenity, that the State can prohibit and punish such expression by all persons in its jurisdiction.").

[31] *Turner*, 482 U.S. at 90 (emphasis added).

[32] *Id.* (emphasis added) (citing *Pell v. Procunier*, 417 U.S. 817, 828 (1974) ("So long as this restriction operates in a neutral fashion, without regard to the content of the expression, it falls within the 'appropriate rules and regulations' to which 'prisoners necessarily are subject,' and does not abridge any First Amendment freedoms retained by prison inmates." (citation omitted))).

[33] *Pell*, 417 U.S. at 826.

[34] *Id.* (internal quotation marks omitted) (emphasis added).

freedoms retained by prison inmates."[35] Thus, even if Warden Cain had a reason for nonneutrally allowing Turner's speech about the prices of his hobby craft while simultaneously prohibiting his speech about the taxes included in those prices, such a reason would not have allowed Warden Cain to restrict Turner's speech under *Turner*. Turner must prevail on the first element for this reason as well.

## III.

Admittedly, the fact that Turner is entitled to prevail on this first element of his retaliation claim does not mean that he will necessarily prevail on the remaining elements. Warden Cain might well have produced evidence sufficient to create genuine issues of material fact that preclude summary judgment. It will be up to the finder of fact to sort all that out. But, in contrast, this first element presents only an issue of law. As such, we are not bound by what the district court did or did not do.

Despite our obligation to engage in this inquiry—and our attendant obligation to review "summary judgments *de novo*"[36]—the majority skirts it entirely, instead remanding "for the district court to make this determination." I respectfully disagree with this approach. Regardless of how unusual the facts may be, the law is clear. We should hold that Turner has satisfied the first element of his claim by proving that his speech at the Rodeo regarding the prices of his wares including the element of the taxes was protected. I am comforted by the belief that the district court will so hold on remand.

---

[35] *Id.* at 828 (citation and internal quotation marks omitted).

[36] *Shields*, 389 F.3d at 149.