# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 17, 2010

No. 09-20715

Lyle W. Cayce
Clerk

KENNETH CUADRA

Plaintiff - Appellant

v.

HOUSTON INDEPENDENT SCHOOL DISTRICT; CAROL WICHMANN; MARMION DAMBRINO; BILLY ALDRICH; BETH BONNETTE; MELBA MARTIN; ANNE PATTERSON

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before JONES, Chief Judge, and REAVLEY and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

Kenneth Cuadra ("Cuadra") appeals a grant of summary judgment for the Houston Independent School District ("HISD") and several HISD personnel (collectively "Appellees") on his 42 U.S.C. § 1983 claims. Cuadra filed suit against the Appellees after he was indicted and subsequently arrested in connection with a falsified student drop-out report sent to the State of Texas by Sharpstown High School ("SHS"). Because we find that Cuadra failed to raise a genuine issue of material fact as to any of his constitutional claims, we AFFIRM the district court's grant of summary judgment for the Appellees.

No. 09-20715

## I. Facts and Procedural History

Cuadra served as a network specialist at SHS until August 2004. As part of his job responsibilities, Cuadra played a role in the school's required annual reporting of student drop-out data to the State of Texas. SHS uses a computer program known as SASI to maintain official records of student data, including student drop-out information. Once data is entered into the SASI program, it can be uploaded to HISD's Public Education Information Management System ("PEIMS"). Data in the PEIMS system is then transferred to the Texas Education Agency ("TEA") via a server known as TEA Edit Plus. Cuadra and Melba Martin ("Martin"), an attendance clerk at SHS, had access to SASI to edit data for "leavers," students who were enrolled or attended the school at some point during the previous school year, but did not re-enroll in the fall. Martin was responsible for inputting or editing "leaver codes," numbers referencing the reason why a student left school. Some of these codes indicated that the student qualified as a "drop-out," while other codes gave other reasons for leaving, such as a family move to another city. Only Cuadra could upload the student drop-out data to the PEIMS program, and this data was periodically sent to the TEA.

Cuadra claims that, on October 22, 2002, Assistant Vice Principal Marmion Dambrino ("Dambrino") and Principal Carol Wichmann ("Wichmann") told him to randomly delete ten to fifteen names from the student drop-out list in anticipation of a meeting with General Superintendent Kaye Stripling ("Stripling").[1] Cuadra admitted that he removed some names from the list on the night of October 22nd. Computer log-in information indicated that Cuadra's ID was the only one used to log on to the system between the evening of October 22nd and the afternoon of October 23rd. During this time frame, the SHS

---

[1] Dambrino and Wichman dispute Cuadra's account.

2

student data report changed from listing thirty drop-outs to listing zero drop-outs.[2]

Sometime after making the changes to the student drop-out data, Cuadra claimed that he accessed the SASI program again and changed the information back. Cuadra alleged that Martin later changed the drop-out data again to show zero drop-outs. Cuadra alleged that the Appellees knew the drop-out numbers were incorrect and tried to cover up their part in the false reporting by pinning responsibility for it on him.

In February of 2003, a local news station reported that SHS had falsified its student drop-out data. Soon after, Billy Aldrich ("Aldrich"), a member of the HISD Department of Professional Standards, commenced an investigation into the matter at the request of Anne Patterson ("Patterson"), Superintendent of HISD's West District. During the course of his investigation, Aldrich spoke to HISD and SHS employees and interviewed Cuadra twice. In both interviews with Aldrich, Cuadra did not disclose that anyone asked him to change the drop-out data.

In May 2003, Assistant Principal Robert Kimball ("Kimball") wrote a letter to Lester Blizzard ("Blizzard"), a Harris County Assistant District Attorney, and alleged that SHS administrators, including several of the named Appellees, were responsible for the false drop-out numbers. Blizzard contacted Aldrich after receiving Kimball's letter and requested a copy of Aldrich's completed report, which Aldrich sent in June 2003. Aldrich's report concluded that Cuadra knowingly changed student leaver codes without authorization. Ultimately, Blizzard decided not to prosecute Cuadra.

---

[2] The last student data report, printed at 4:39 p.m. on October 23rd, served as the foundation for Cuadra's subsequent criminal indictment for knowingly making a false alteration to a government record.

No. 09-20715

After Cuadra initiated an internal grievance, complaining that he was the false target of Aldrich's investigation, HISD decided to hire outside counsel, the law firm of Rusty Hardin and Associates, to conduct an independent investigation into the events. The findings of two attorneys from the firm ("Hardin report") confirmed the allegation that Cuadra knowingly changed leaver codes listed on the PEIMS student drop-out report sent to the TEA without authorization on October 22nd or October 23rd. After reviewing the Hardin report, HISD's Deputy Superintendent Abe Saavedra ("Saavedra") denied Cuadra's grievance and recommended that the report be sent to the Harris County District Attorney's office for an independent determination of potential criminal liability of any individual involved. Cuadra was again re-assigned, this time to the HISD Bus Barn. Cuadra lost another grievance related to this re-assignment and eventually resigned in August 2004.

On October 7, 2005, Tess Buess ("Buess"), District Attorney Blizzard's replacement, sought and obtained a grand jury indictment against Cuadra for knowingly making a false alteration to a government record.[3] Cuadra was arrested and released on bond following the indictment, which was eventually quashed. However, another grand jury subsequently re-indicted Cuadra in May 2006.

A few days after a conversation with Cuadra's defense attorney in October 2006, Buess dismissed the second indictment against Cuadra and issued a press release on the same day. Cuadra contends that Buess dismissed the indictment because of a document she received from Cuadra's defense attorney that Cuadra

---

[3] That indictment against Cuadra stated that on or about October 22, 2002, Cuadra unlawfully and knowingly made a false alteration of a governmental record, namely a public school record (Exhibit A) and Cuadra's actions were done with intent to defraud and harm another. Exhibit A was the PEIMS Data Review Drop-out Roster printed on October 23, 2002 at 4:39 p.m.

No. 09-20715

deems the "smoking gun."[4]   Cuadra argues that at least one of the Appellees possessed this document and did not disclose it to Buess prior to his indictments.

Cuadra filed the instant 42 U.S.C. § 1983 suit in federal district court. The Appellees moved for summary judgment on all of Cuadra's claims, and Cuadra then moved for partial summary judgment on his First and Fourteenth Amendment claims, the only claims that are the subject of this appeal. Ultimately, the district court dismissed Cuadra's action with prejudice and denied Cuadra's post-judgment motion. This timely appeal followed.

## II. Standard of Review

The Fifth Circuit reviews a grant of summary judgment de novo, applying the same standard as the district court. *Shields v. Twiss*, 389 F.3d 142, 149 (5th Cir. 2004). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). This court "construes all facts and inferences in the light most favorable to the nonmoving party when reviewing grants of motions for summary judgment." *Murray v. Earle*, 405 F.3d 278, 284 (5th Cir. 2005). Where the burden of production at trial ultimately rests on the nonmovant, "the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Shields*, 389 F.3d at 149. Then, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* (citing FED. R. CIV. P. 56(e)). "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for

---

[4] This document is a portrait-printed roster of the names of thirty students alongside six columns of data with two sets of handwriting on it. Dambrino's handwriting is on the bottom of the document. Cuadra alleged that Martin's handwriting was the other set. He asserts that this document proves his innocence because the handwritten information matches the codes entered for each student that eventually resulted in a zero drop-out report to the Texas Education Agency. The document has no date on it.

No. 09-20715

the nonmoving party." *Hamilton v. Seque Software, Inc.,* 232 F.3d 473, 477 (5th Cir. 2000). "A fact issue is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Id.* The Fifth Circuit may "affirm a grant of summary judgment on any grounds supported by the record and presented to the [district] court." *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008).

## III. Discussion

Cuadra challenges the summary judgment entered on his Fourth and Fourteenth Amendment claims.[5] We address each issue in turn.

### A. Cuadra's Fourth Amendment Claims

#### 1. No Free-Standing Malicious Prosecution Claim

Cuadra alleges that the Appellees violated his Fourth Amendment rights by intentionally withholding information and manipulating evidence to procure his indictment. To the extent that Cuadra alleges that the Appellees violated his constitutional rights by engaging in malicious prosecution, that argument is foreclosed by our decision in *Castellano v. Fragozo*, 352 F.3d 939, 958 (5th Cir. 2003) (en banc). In *Castellano*, we noted that "[t]he initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection--the Fourth Amendment if the accused is seized and arrested, for example, or other constitutionally secured rights if a case is further pursued." *Id.* at 953. However, we held that a freestanding 42 U.S.C. § 1983 claim based solely on malicious prosecution was not viable. *Id.* at 942. Rather, the claimant must allege "that officials violated specific constitutional rights in

---

[5] Cuadra asserted a litany of other constitutional violations at various times throughout these proceedings, including a Fourteenth Amendment equal protection claim, First Amendment retaliatory prosecution claims, and conspiracy claims. Because Cuadra failed to brief any of these claims in his initial brief to this court, he has waived them. *See Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993) ("This Court will not consider a claim raised for the first time in a reply brief.") (internal citations omitted).

connection with a 'malicious prosecution.'" *Id.* at 945. Thus, Cuadra's attempt to assert a free-standing § 1983 malicious prosecution claim fails as a matter of law.[6]

## 2. Independent Fourth Amendment Violations

Cuadra has not raised a genuine issue of material fact as to any other possible violation of his Fourth Amendment rights. Cuadra explicitly waived a false arrest claim in the district court. Although Cuadra alleges he was the subject of an "unreasonable seizure," he has not shown that his arrest occurred "in an extraordinary manner, unusually harmful to an individual's privacy or even physical interests." *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001).

Even if we considered either a false arrest or unreasonable seizure claim, Cuadra has failed to raise a fact issue as to lack of probable cause, a necessary component of each claim. "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *United States v. McCowan*, 469 F.3d 386, 390 (5th Cir. 2006). We have held that "if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the

---

[6] Even if we were to reach the common law elements of malicious prosecution to determine whether the Appellees' actions led to violations of Cuadra's Fourth Amendment rights, we find that Cuadra failed to create a fact issue on several of those elements. To establish a Texas common law claim for malicious prosecution, the plaintiff must show: (1) a criminal action was commenced against him; (2) the prosecution was caused (initiated or procured) by the defendant or with his aid; (3) the action terminated in the plaintiff's favor; (4) the plaintiff was innocent; (5) the defendant acted without probable cause; (6) the defendant acted with malice; and (7) the criminal proceeding damaged the plaintiff. *Taylor v. Gregg*, 36 F.3d 453, 455 (5th Cir. 1994), *overruled in part by Castellano*, 352 F.3d 939; *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 518 (Tex. 1997). Cuadra has not shown that any of the Appellees initiated or procured his prosecution, as the evidence shows that the Appellees did not influence Buess and merely cooperated with her during her independent investigation. Cuadra also created no fact issue as to whether any of the Appellees actively sought his indictment.

intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *Taylor*, 36 F.3d at 456.  However, the chain of causation remains intact if "it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant." *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988).  "[T]he chain of causation is broken only where all the facts are presented to the grand jury, or other independent intermediary where the malicious motive of the law enforcement officials does not lead them to withhold any relevant information from the independent intermediary." *Id.*

Here, both Buess and two separate grand juries qualified as independent intermediaries.   Cuadra's mere allegations of "taint," without more, are insufficient to overcome summary judgment.   *Taylor*, 36 F.3d at 457 (emphasizing that the "taint" must be *shown* and finding no summary judgment evidence to support assertions that an intermediary relied on an officer's false report).  Cuadra admitted to changing the student drop-out data on October 22nd, which alone should suffice to establish probable cause for his indictments. Despite the alleged significance of the "smoking gun," Buess testified in her deposition that she did not consider the document exculpatory, and it was in her possession before she sought Cuadra's re-indictment.  Cuadra has also not raised a fact issue as to whether any of the Appellees knowingly withheld the "smoking gun" document or any other allegedly exculpatory information, thereby tainting Buess's independent decision to seek Cuadra's indictments or either grand jury's decision to return the indictments.

As Cuadra has failed to raise a fact issue as to any potential Fourth Amendment violation, we AFFIRM the district court's grant of summary judgment in favor of the Appellees on this issue.

**B. Cuadra's Fourteenth Amendment Substantive Due Process Claim**

Cuadra preserved for appeal only one Fourteenth Amendment substantive

due process claim based on his prosecution.[7] We find such a claim foreclosed by the Supreme Court's decision in *Albright v. Oliver*, 510 U.S. 266 (1994). In *Albright*, the Court held that there was no Fourteenth Amendment "liberty interest" or substantive due process right to be free from criminal prosecution unsupported by probable cause. *Id.* at 270-71; *Castellano,* 352 F.3d at 946–47. Rather, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process' must be the guide for analyzing these claims.'" *Albright*, 510 U.S. at 273 (internal citations omitted). Thus, the *Albright* Court held that the plaintiff's claims based on prosecution without probable cause were best analyzed under the Fourth Amendment, as the "Framers [of the Constitution] considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it." *Id.* at 274.

Cuadra's Fourteenth Amendment claims are based on alleged pretrial deprivations of his constitutional rights and, under the holding in *Albright*, such claims should be brought under the Fourth Amendment. Cuadra attempts to support his Fourteenth Amendment due process claims by citing the Supreme Court's holding in *Napue v. Illinois*, where the Court stated that "a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction . . . ." 360 U.S. 264, 269 (1959). However, Cuadra was not *convicted*

---

[7] Cuadra's other Fourteenth Amendment claims were time-barred. The applicable limitations period for 42 U.S.C. § 1983 claims is governed by reference to the most analogous cause of action under state law. *Owens v. Okure*, 488 U.S. 235, 236 (1989). Under the general Texas tort statute, Cuadra had two years after the day the cause of action accrued to bring his claims. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003 (Vernon 2005). Federal law determines the date of accrual for § 1983 claims. *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir. 1992). A general cause of action accrues when the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured. *Id.* As the events Cuadra complained of in most of his Fourteenth Amendment claims occurred in 2004, and Cuadra did not file suit until 2007, those claims were time-barred.

No. 09-20715

of a crime based on false evidence.  Rather, he complains of alleged deprivations of his pretrial rights resulting from his indictments.  Such a claim is not a viable Fourteenth Amendment claim.  Thus, we AFFIRM summary judgment for the Appellees on Cuadra's Fourteenth Amendment substantive due process claim.

## IV. Conclusion

For the forgoing reasons, we AFFIRM the grant of summary judgment for the Appellees.