# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-60176

United States Court of Appeals
Fifth Circuit

**FILED**
April 5, 2019

Lyle W. Cayce
Clerk

CARLA BLAKE,

      Plaintiff–Appellee,

v.

DON LAMBERT, in his individual capacity,

      Defendant–Appellant.

Appeal from the United States District Court
for the Northern District of Mississippi

Before HIGGINBOTHAM, GRAVES, and WILLETT, Circuit Judges.

DON R. WILLETT, Circuit Judge:

Don Lambert, a Mississippi school attendance officer, swore an arrest warrant affidavit against Carla Blake for failing to ensure a child attended school. Blake contends that Lambert violated her Fourth Amendment rights because the affidavit lacked probable cause under *Malley v. Briggs*[1] and was untruthful under *Franks v. Delaware*.[2] Lambert moved to dismiss or for summary judgment based on qualified immunity, which the district court denied.

---

[1] 475 U.S. 335 (1986).

[2] 438 U.S. 154 (1978).

No. 18-60176

We AFFIRM as to the *Malley* claim because the affidavit lacked any facts to establish probable cause. But we REVERSE as to the *Franks* claim because it is incompatible with a *Malley* theory.

## I. BACKGROUND

### A.    Factual

Lambert is a school attendance officer at the Mississippi Department of Education.[3] Under the state's Compulsory School Attendance Law, his duties include investigating student absences; giving notice of absences to parents, guardians, or custodians; and eventually initiating legal process with a court of competent jurisdiction.[4] S.W. was a six-year-old child enrolled in Prentiss County, Mississippi public schools. Blake is S.W.'s aunt. Blake was the "contact" for S.W. according to school records, which normally meant that S.W. lived with her.[5] The school records are generally reliable, particularly compared with parents' or guardians' informal statements. Only the school district and the responsible adults may update the school records, not the school attendance officer.

In September 2013 the school reported to Lambert that S.W. had five unexcused absences since school began a month earlier. Lambert sent Blake a form letter informing her of the absences. The letter said it was Blake's responsibility to see that S.W. was attending school, cited the Compulsory School Attendance Law, and listed potential penalties. S.W. continued to accumulate unexcused absences. So Lambert called Blake. Blake said she was

---

[3] The facts set out are undisputed unless otherwise noted and are viewed in the light most favorable to Blake, the nonmovant. *See Hart v. O'Brien*, 127 F.3d 424, 432 n.1 (5th Cir. 1997), *abrogated on other grounds by Kalina v. Fletcher*, 522 U.S. 118 (1997).

[4] MISS. CODE ANN. §§ 37-13-89(4)(g), 37-13-91(7).

[5] Blake appears to disagree that the "Contact Information" field where her name appears indicates responsibility for the child. But she offers no evidence for this besides conclusory statements. Lambert, on the other hand, submitted evidence that the school notified him that S.W. lived with Blake.

2

S.W.'s aunt, and had also been his foster parent, but she did not have custody, care, or control of S.W. during that school year. She said S.W. lived with his mother, Tracey Perry. Lambert apologized for sending Blake the letter. He also said Blake should contact the school to update its records. Later that day Lambert talked to Perry and her husband on the phone, but the record does not show that they directly addressed who had custody of S.W.

In June 2014, at the end of the school year, S.W. had sixteen total unexcused absences. And school records continued to show that S.W. lived with Blake. Lambert prepared an affidavit stating that Blake had contributed to the delinquency of S.W. by refusing or willfully failing to ensure he enrolled in and attended school. The affidavit did not mention Lambert's conversations with Blake or the Perrys. Lambert submitted the affidavit to the Prentiss County Justice Court, which issued a warrant for Blake's arrest. A sheriff's deputy arrested Blake at her home. Blake was handcuffed, taken to jail, strip searched, and detained for a short time before being released on bond.

Meanwhile, the Justice Court judge received a call from someone at the Mississippi Department of Human Services suggesting that the warrant affidavit was inaccurate because the child did not live with Blake. The judge called Lambert and asked him to "review[]" the matter. Lambert submitted a request to drop the charge, which stated, "I filed an affidavit on the wrong person by mistake." Lambert also admitted to a witness that he was wrong to have Blake arrested and was aware that S.W.'s mother now had custody. But later Lambert rechecked the school records and saw that Blake was still listed as the contact for S.W. He also confirmed with his supervisor that the school records were the most reliable source of information. He now believes that his initial affidavit was supported by probable cause.

No. 18-60176

## B.    Procedural

Blake sued Lambert under 42 U.S.C. § 1983 for violating her Fourth Amendment rights. Lambert moved to dismiss the claims, or for summary judgment, based on qualified immunity and failure to state a claim. The district court treated Lambert's motion as one for summary judgment because both parties relied on matters outside the pleadings and were on notice of summary judgment adjudication.

The district court denied qualified immunity. It held that "a reasonable jury could conclude that Blake's arrest violated the Fourth Amendment because Lambert knowingly or recklessly applied for her arrest warrant without probable cause or because the warrant application lacked any indicia of probable cause." The district court also denied that part of the motion based on failure to state a claim. Lambert appealed the district court's order.

## II. JURISDICTION AND STANDARD OF REVIEW

Jurisdiction to review denial of qualified immunity at summary judgment is limited. "[W]e can review the *materiality* of any factual disputes, but not their *genuineness*."[6] That is, we "have jurisdiction 'to decide whether the district court erred in concluding as a matter of law that officials are not entitled to qualified immunity on a given set of facts.'"[7] So taking Blake's allegations and summary judgment evidence as true, we may decide if Lambert's "course of conduct would be objectively unreasonable in light of clearly established law."[8] And "[w]ithin that narrow universe, our review is de novo."[9]

---

[6] *Kinney v. Weaver*, 367 F.3d 337, 347 (5th Cir. 2004) (en banc) (quoting *Wagner v. Bay City*, 227 F.3d 316, 320 (5th Cir. 2000)).

[7] *Perniciaro v. Lea*, 901 F.3d 241, 251 (5th Cir. 2018) (quoting *Kinney*, 367 F.3d at 347).

[8] *Kinney*, 367 F.3d at 347.

[9] *Perniciaro*, 901 F.3d at 251; *see Kinney*, 367 F.3d at 349.

As to Lambert's failure-to-state-a-claim argument, we do ordinarily "have 'jurisdiction to pass on the sufficiency of [the] pleadings'" when reviewing denial of qualified immunity.[10] But here the district court properly treated Lambert's motion as one for summary judgment. So this part of the decision was based on the summary judgment standard, not the "sufficiency of [the] pleadings."[11] Federal Rule of Civil Procedure 12(d) required this because "matters outside the pleadings [we]re presented to and not excluded by the court." We lack jurisdiction to review interlocutory denial of summary judgment on the merits of a claim—as opposed to an immunity defense—and so do not address this issue.[12]

## III. DISCUSSION

We evaluate Lambert's qualified immunity arguments under the familiar two-part standard. "Once invoked, a plaintiff bears the burden of rebutting qualified immunity by showing two things: (1) that the officials violated a statutory or constitutional right and (2) that the right was 'clearly established at the time of the challenged conduct.'"[13]

### A.   Lambert Does Not Have Qualified Immunity from the *Malley* Claim at Summary Judgment.

Blake says that Lambert violated her Fourth Amendment right, recognized in *Malley v. Briggs*, to be free from arrest based on a "warrant application . . . so lacking in indicia of probable cause as to render official belief in its existence unreasonable."[14] "The *Malley* wrong is not the presentment of

---

[10] *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 439 (5th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 672–73 (2009)).

[11] *Id.* (quoting *Iqbal*, 556 U.S. at 673).

[12] *See Kinney*, 367 F.3d at 346 ("[A] denial of a defendant's motion for summary judgment is ordinarily not immediately appealable, [but] the Supreme Court has held that the denial of a motion for summary judgment based upon qualified immunity is a collateral order capable of immediate review.").

[13] *Perniciaro*, 901 F.3d at 255 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

[14] 475 U.S. at 344–45.

false evidence, but the obvious failure of accurately presented evidence to support the probable cause required for the issuance of a warrant."[15] On this claim, Lambert's "determination that the warrant was valid entitles [him] to qualified immunity from suit unless, 'on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue' under the circumstances."[16]

We hold that Blake established a *Malley* violation at the summary judgment stage. Lambert's affidavit simply identifies Blake, recites the charged offense, and cites the corresponding Mississippi statutes.[17] It does not provide any supporting facts from which a magistrate could independently determine probable cause. For example, it does not describe Lambert's experience, the sources of his information and their reliability, his conversations with Blake and the Perrys, Blake's relationship to S.W., or

---

[15] *Melton v. Phillips*, 875 F.3d 256, 264 (5th Cir. 2017) (en banc).

[16] *Spencer v. Staton*, 489 F.3d 658, 661 (5th Cir.) (quoting *Malley*, 475 U.S. at 341), *modified on other grounds on reh'g*, 489 F.3d 666 (5th Cir. 2007).

[17] It reads in full:

GENERAL AFFIDAVIT
THE STATE OF MISSISSIPPI
Before me, Misty Harris a Justice Court Deputy of Prentiss County, in Justice District No. __ School Attendance Officer, Don Lambert, 300B West George E. Allen Drive, Booneville MS makes affidavit that CARLA BLAKE, on or about 05/22/2014 in the County aforesaid, in said Justice's District:
DID WILLFULLY AND LAWFULLY CONTRIBUTE TO THE DELINQUENCY OF S__W__ A CHILD 6 YEARS OF AGE, BY REFUSING TO OR WILLFULLY FAILING TO MAKE SURE THAT SAID CHILD ENROLLS IN AND ATTENDS SCHOOL AS REQUIRED BY MISSISSIPPI COMPULSORY SCHOOL ATTENDANCE LAW IN VIOLATION OF 97-5-39(1) (37-13-91)
Against the peace and dignity of the State of Mississippi.
[Signature of affiant]
Don Lambert
School Attendance Officer
[Address and phone numbers]
Sworn to and subscribed before me, this 10th day of June 2014
[Signature of clerk]
Justice Court Clerk/Deputy Clerk

S.W.'s absence record. Lambert's affidavit is indistinguishable from what we called the "textbook example" of a facially invalid affidavit in *Spencer v. Staton*.[18] The affidavit in *Spencer*, like Lambert's, stated that the named person committed the offense but did not provide factual support.[19]

We also hold that this was clearly established when Lambert swore his affidavit. The general *Malley* rule dates from the 1980s. And our 2007 decision in *Spencer* shows Lambert's affidavit violated that rule. It has also been clear since the 1980s that the Fourth Amendment applies to school officials.[20]

Lambert's principal contrary argument is that no court has applied *Malley* to school attendance officers. He contends this is significant because different Fourth Amendment standards sometimes apply in non-police contexts, like schools or social worker investigations.[21] And Lambert says he has less experience and training than the police officers who were liable in previous *Malley* cases.

But the right against arrest on a "barebones" affidavit was well known, and there is no reason to distinguish Blake's right from that of someone arrested on a police officer's affidavit.[22] Initially, the rule that "no Warrants shall issue, but upon probable cause" is quite uniform.[23] The school and social worker cases are distinguishable because they define what Fourth Amendment rights exist in certain contexts. For example, in *Roe* we held for the first time

---

[18] 489 F.3d at 661; *see id.* at 661 n.2 (quoting affidavit in full).

[19] *See* 489 F.3d at 661 n.2.

[20] *See New Jersey v. T.L.O.*, 469 U.S. 325, 333–36 (1985) (applying Fourth Amendment to "public school officials," specifically Assistant Vice Principal).

[21] *See id.* at 340–41 (holding that warrant and probable cause requirements do not apply to public school searches); *Roe v. Tex. Dep't of Protective & Regulatory Servs.*, 299 F.3d 395, 401 (5th Cir. 2002) ("We have held that the Fourth Amendment regulates social workers' civil investigations, but we have not fleshed out the relevant Fourth Amendment standards.").

[22] *Spencer*, 489 F.3d at 661.

[23] U.S. CONST. amend. IV.

that the warrant and probable cause requirements apply to a social worker's body cavity search of a child.[24] Here, in contrast, Lambert does not dispute that probable cause governs arrest warrant affidavits. As the Supreme Court teaches, "[t]he contours of the *right* must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."[25]

And Lambert's distinction from a police officer is unconvincing. First, Lambert has some understanding of warrant affidavits. He routinely submitted them to the court and was aware they could lead to arrests. He even had a statutory duty to "file a petition with the youth court . . . or . . . a court of competent jurisdiction as it pertains to parent or child" after exhausting other efforts to secure school attendance.[26] Second, Lambert's claim to limited experience and training goes to subjective good faith, not objective legal reasonableness. "[A] reasonably competent public official should know the law governing his conduct."[27]

There is some evidence that Lambert's affidavit followed a standard practice for local school attendance officers. But even if proven, this fact also goes to subjective good faith. The Supreme Court has held that agency policy may support an action's reasonableness if Fourth Amendment law is "undeveloped."[28] But "[s]uch a policy, of course, could not make reasonable a belief that was contrary to a decided body of case law."[29] That was exactly the situation here. *Malley*, as applied in *Spencer*, was a decided body of law. We

---

[24] 299 F.3d at 407–08. And although *T.L.O.* held that warrants and probable cause were *not* required for ordinary searches in public schools, it still made new Fourth Amendment law—in contrast to the issue here. *See* 469 U.S. at 340–41.

[25] *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (emphasis added).

[26] MISS. CODE ANN. § 37-13-91(7).

[27] *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982).

[28] *Wilson v. Layne*, 526 U.S. 603, 617 (1999).

[29] *Id.* Plus, we have no indication Lambert adhered to a formal "policy."

are bound not to "reintroduce into qualified immunity analysis the inquiry into officials' subjective intent that *Harlow* [*v. Fitzgerald*] sought to minimize."[30]

Nor does the judge's warrant approval insulate Lambert. "Although we accord great deference to a magistrate's determination of probable cause, we will not 'defer to a warrant based on an affidavit that does not provide the magistrate with a substantial basis for determining the existence of probable cause.'"[31] The district court correctly denied summary judgment on the *Malley* claim based on qualified immunity.

## B.     Lambert Has Qualified Immunity from the *Franks* Claim.

Blake also alleges that Lambert violated her Fourth Amendment right, recognized in *Franks v. Delaware*,[32] to "be free from police arrest without a good faith showing of probable cause."[33] An official violates this right if he "swear[s] to false information in an affidavit in support of a search [or arrest] warrant, provided that: (1) the affiant knew the information was false or would have known it was false except for the affiant's reckless disregard for the truth; and (2) the warrant would not establish probable cause without the false information."[34] A similar standard applies to omitting exculpatory information.[35]

But a facially deficient affidavit can't trigger this analysis. In *Kohler v. Englade* we held that "a plaintiff cannot hold an officer liable under *Franks* for intentionally omitting important exculpatory information from a warrant

---

[30] *Anderson*, 483 U.S. at 641 (citing *Harlow*, 457 U.S. at 815–20).

[31] *Kohler v. Englade*, 470 F.3d 1104, 1109 (5th Cir. 2006) (quoting *United States v. Leon*, 468 U.S. 897, 914–15 (1984)); *cf. Messerschmidt v. Millender*, 565 U.S. 535, 556 (2012) ("The question . . . is not whether the magistrate erred in believing there was sufficient probable cause . . . . It is instead whether the magistrate so obviously erred that any reasonable officer would have recognized the error.").

[32] 438 U.S. at 171.

[33] *Winfrey v. Rogers*, 901 F.3d 483, 494 (5th Cir. 2018).

[34] *Hart*, 127 F.3d at 442 (citing *Franks*, 438 U.S. at 171).

[35] *See Winfrey*, 901 F.3d at 494; *Melton*, 875 F.3d at 264.

No. 18-60176

affidavit when the officer has also committed a *Malley* violation by presenting a facially deficient warrant affidavit to the issuing judge."[36] We reach the same result here.[37]

## IV. CONCLUSION

We AFFIRM as to the *Malley* claim and REVERSE as to the *Franks* claim.

---

[36] 470 F.3d at 1113–14.

[37] *See Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423, 426 (5th Cir. 1987) (holding that "one panel cannot overturn another panel").