# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 28, 2022

Lyle W. Cayce
Clerk

No. 20-50367
consolidated with
Nos. 20-50372, 20-50380, 20-50408, 20-50453

---

John Wilson, et al.,

*Plaintiffs—Appellants*,

*versus*

Brent Stroman, *Chief of Police for the Waco Police Department*, *in his individual capacity*; Manuel Chavez, *Waco Police Department Detective*, *in his individual capacity*; Abelino "Abel" Reyna, *Elected District Attorney for McLennan County*, *Texas*, *in his individual capacity*; City of Waco, Texas; McLennan County, Texas; Robert Lanning, *in his individual capacity*; Jeffrey Rogers, *in his individual capacity*; Sergeant Patrick Swanton, *in his individual capacity*; Steven Schwartz, *in his individual capacity*; Christopher Frost, *in his individual capacity*,

*Defendants—Appellees*,

---

Appeals from the United States District Court
for the Western District of Texas
USDC Nos. 1:17-CV-453; 1:17-CV-471; 1:15-CV-1040; 1:15-CV-1041;
1:15-CV-1044; 1:17-CV-479; 1:18-CV-1044; 1:18-CV-1045; 1:18-CV-1046;
1:18-CV-1047; 1:17-CV-448; 1:17-CV474; 1:15-CV-1042; 1:15-CV-1043;
1:15-CV-1045; 1:16-CV-575; 1:17-CV-457; 1:17-CV-480; 1:19-CV-475 and
1:17-CV-465

---

No. 20-50367
c/w Nos. 20-50372, 20-50380, 20-50408, 20-50453

Before RICHMAN, *Chief Judge*, and CLEMENT and HIGGINSON, *Circuit Judges*.

STEPHEN A. HIGGINSON, *Circuit Judge*:

In this consolidated appeal, Plaintiffs-Appellants challenge the district court's application of the independent intermediary doctrine to dismiss their Fourth Amendment false arrest claims. We REVERSE and REMAND for further proceedings.

I.

This case concerns the fallout from the deadly shootout that occurred on May 17, 2015, at the Twin Peaks restaurant in Waco, Texas. This court recently resolved a related set of appeals concerning the Twin Peaks shootout in *Terwilliger v. Reyna*, 4 F.4th 270 (5th Cir. 2021). The individual plaintiffs here are similar to the plaintiffs in *Terwilliger* in several respects. All are motorcyclists who had gathered at the Twin Peaks for a meeting of the Texas Confederation of Clubs & Independents. *See id.* at 277. All were eventually arrested following the shootout for Engaging in Organized Criminal Activity ("EIOCA"), in violation of Texas Penal Code § 71.02. *See Terwilliger*, 4 F.4th at 277. And all were arrested pursuant to the same "form warrant affidavit" that was presented to the magistrate judge as the basis for the arrest warrants. *See id.* at 278-79. But for the subject's name, which was to be inserted on a blank line, the affidavit was identical in every respect. *Id.* In total, 177 individuals were arrested using this identical "fill-in-the-name" affidavit. *Id.* at 279. Following their arrests, both the *Terwilliger* plaintiffs and the plaintiffs here filed multiple individual § 1983 actions asserting similar false arrest claims, which are premised on alleged defects in the form affidavit used to secure the arrest warrants. *See id.*

Unlike the *Terwilliger* plaintiffs, however, the individual plaintiffs here—in addition to being arrested pursuant to the magistrate's warrant—were all subsequently *indicted* by a grand jury for EIOCA. This difference proved crucial to the district court's resolution of the § 1983 actions brought

by each set of plaintiffs. With respect to the *Terwilliger* plaintiffs, the district court held that their *Franks* false arrest claims *survived* the motion to dismiss stage, at least with respect to some defendants. *Id.* at 283-84 (citing *Franks v. Delaware*, 438 U.S. 154 (1978)). For the plaintiffs here, by contrast, the district court granted in full the defendants' motion to dismiss the false arrest claims. The district court held that, pursuant to the independent intermediary doctrine, the grand jury's indictment served to break the chain of causation for any false arrest claim pertaining to the form affidavit and the arrest warrant issued by the magistrate judge. *See McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017) (citation omitted).

Because the district court concluded that the independent intermediary doctrine applied, it did not discuss the merits of the plaintiffs' false arrest claims. But the nature of the plaintiffs' false arrest claims is relevant to our inquiry here because they argue, in essence, that the independent intermediary doctrine should not apply to the grand jury's indictment because the grand jury was misled *in the very same way* as the magistrate who issued the arrest warrants. We will thus begin by discussing, at a high level, the nature of the plaintiffs' false arrest claims.

## II.

The false arrest claims asserted by the plaintiffs here largely mirror the claims asserted by the *Terwilliger* plaintiffs. Broadly, both sets of plaintiffs take aim at the form warrant affidavit and allege that defects in that affidavit led to them being arrested without particularized probable cause. *Terwilliger*, 4 F.4th at 279. More specifically, both sets of plaintiffs asserted two alternative false arrest claims, one premised on *Malley v. Briggs*, 475 U.S. 335 (1986) and the other premised on *Franks v. Delaware*, 438 U.S. 154 (1978). *See Terwilliger*, 4 F.4th at 279.

In *Malley*, the Supreme Court described that an officer can be held liable for a false arrest despite the issuance of an arrest warrant by a magistrate if the affidavit the officer presented to the magistrate was "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." 475 U.S. at 344-45 (citation omitted). "The *Malley* wrong is not the presentment of false evidence, but the obvious failure of accurately presented evidence to support the probable cause required for the issuance of a warrant." *Melton v. Phillips*, 875 F.3d 256, 264 (5th Cir. 2017) (en banc).

In other words, an officer can avoid liability under *Malley* if he presents a warrant affidavit that facially supplies probable cause to arrest the subject of the warrant. *See Blake v. Lambert*, 921 F.3d 215, 221-22 (5th Cir. 2019). But even if a warrant affidavit supplies probable cause on its face, an officer can still be liable under *Franks* if the apparent probable cause is the result of "material misstatements or material omissions." *Terwilliger*, 4 F.4th at 281 (citations omitted). Specifically, an officer is liable under *Franks* if he "deliberately or recklessly provides false, material information for use in an affidavit in support of [a warrant]" or "makes knowing and intentional omissions that result in a warrant being issued without probable cause" *Melton*, 875 F.3d at 264 (alteration in original) (emphasis removed) (first quoting *Hart v. O'Brien*, 127 F.3d 424, 448 (5th Cir. 1997); and then quoting *Michalik v. Hermann*, 422 F.3d 252, 258 n.5 (5th Cir. 2005)).

In *Terwilliger*, this court held that the challenged form warrant affidavit, on its face, "sufficiently alleged probable cause to arrest those to whom its facts applied" for the offense of EIOCA. 4 F.4th at 282. More precisely, the court described that the affidavit supplied probable cause to conclude that "members or associates of the Bandidos or Cossacks instigated and were involved in the Twin Peaks shootout, and that their conduct rose to the level of violating the [offense of] EIOCA." *Id.* Correspondingly, the affidavit—in essence—represented that each individual subject that was

No. 20-50367
c/w Nos. 20-50372, 20-50380, 20-50408, 20-50453

arrested (the plaintiffs here among them) was a member or associate of the Bandidos or Cossacks who was involved in the shootout and the unlawful activity more generally described in the affidavit. *See id.* at 278-79, 282-83.

Furthermore, this court described that the *Terwilliger* plaintiffs had sufficiently *alleged* that this latter, particularized representation was based on materially false statements and omissions that were deliberately or recklessly made by the defendants. *See id.* at 282-83. For example, the plaintiffs "den[ied] affiliation with the Bandidos or Cossacks," denied "any involvement with or membership in a 'criminal street gang'" and, in some instances, denied wearing any signs or symbols that would identify them as associated with the Bandidos or Cossacks, or any other alleged criminal street gang. *Id.* at 282. They further denied engaging in any of the unlawful conduct generally described in the affidavit. *See id.* In addition, the plaintiffs alleged that the defendants had "deliberately excluded relevant information that would have weighed against individualized probable cause, such as video evidence, witness interviews, and membership in motorcycle clubs known to be independent and not affiliated with the Bandidos or Cossacks." *Id.* at 283.

Once the affidavit was "corrected" to account for these alleged false statements and omissions, this court concluded that "the remaining particularized facts in the affidavit" were insufficient to establish probable cause to arrest any of the subjects for EIOCA. *Id.* As a result, the court held that the *Terwilliger* plaintiffs had sufficiently alleged a *Franks* claim at the pleading stage (but only against some of the named defendants). *Id.* at 283-84.

In sum, *Terwilliger* sets the lay of the land for analyzing the false arrest claims in this case. It does so in two ways. First, it construes the challenged form warrant affidavit as (1) generally alleging that members of the Bandidos and Cossacks engaged in violent activity at the Twin Peaks that amounted to

5

No. 20-50367
c/w Nos. 20-50372, 20-50380, 20-50408, 20-50453

EIOCA, *and* (2) linking each specific subject of the warrant to that general set of probable cause-establishing facts, thus creating particularized probable cause to arrest each subject. *See id.* at 282-83. Second, *Terwilliger* describes that the plaintiffs in that case successfully pleaded *Franks* claims by plausibly alleging in their complaints that (1) they were not associated with the Bandidos or Cossacks and that they had nothing to do with the violent activity that is described in the affidavit and (2) certain defendants recklessly or knowingly caused it to be stated otherwise in the affidavit (i.e., a material misstatement) and/or excluded from the affidavit information in their possession that would have materially undermined the aforementioned particularized probable cause (i.e., a material omission). *See id.*

## III.

As discussed above, the district court pretermitted any discussion of whether the plaintiffs here had adequately alleged a *Franks* claim with respect to the form affidavit and their ensuing arrests pursuant to the magistrate-issued warrant. It did so because it concluded that any such claim must necessarily fail as a result of the plaintiffs' subsequent indictment by the grand jury and the application of the independent intermediary doctrine.

We review de novo the district court's grant of the defendants' motion to dismiss and its application of the independent intermediary doctrine. *McLin v. Ard*, 866 F.3d 682, 688 (5th Cir. 2017). We hold that the district court erred in its application of the independent intermediary doctrine and take this opportunity to clarify how the doctrine operates with respect to *Franks* (and *Malley*) claims, especially when two separate intermediaries are involved.

## A.

"It is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the

6

intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *McLin*, 866 F.3d at 689 (quoting *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009)). Thus, a properly secured arrest warrant or grand jury indictment will shield a defendant who has committed or initiated a false arrest. *Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548, 553-54 (5th Cir. 2016). This is true even if the independent intermediary's action occurred after the arrest or if the arrestee was never convicted of a crime. *Id.* at 554.

But the intermediary must be truly independent. Thus, "the initiating party may be liable for false arrest if the plaintiff shows that 'the deliberations of that intermediary were in some way *tainted* by the actions of the defendant.'" *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009) (emphasis added) (quoting *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988)). This court has sometimes referred to this principle as the "taint exception." *See, e.g.*, *McLin*, 866 F.3d at 689.

Regardless of label, this court has recognized *Franks* and *Malley* as functional exceptions to the independent intermediary doctrine. *See Mayfield v. Currie*, 976 F.3d 482, 487 (5th Cir. 2020) (describing *Franks* and *Malley* as "two ways to overcome the [independent intermediary] doctrine"); *Terwilliger*, 4 F.4th at 281 ("Functionally, the holding of *Franks* is an exception to the independent intermediary doctrine."); *Anokwuru v. City of Houston*, 990 F.3d 956, 963-64 (5th Cir. 2021) (discussing *Franks* as an exception to the independent intermediary doctrine); *Arizmendi v. Gabbert*, 919 F.3d 891, 897 (5th Cir. 2019) (same); *see also Blake v. Lambert*, 921 F.3d 215, 220 (5th Cir. 2019) (describing that a warrant affidavit suffering a *Malley*

defect "does not provide any supporting facts from which a magistrate could independently determine probable cause").

Of course, it could not be otherwise. It would defy Supreme Court precedent to hold that, for example, a plaintiff had successfully pleaded a *Malley* claim by alleging that an officer had presented a facially deficient warrant affidavit to a magistrate but that the officer was nonetheless insulated from liability because the magistrate proceeded to issue a warrant based on that affidavit. *See Malley*, 475 U.S. at 345-46 (holding that an officer is liable for submitting a deficient warrant application even if a magistrate approves it). Thus, if a plaintiff adequately pleads that an officer has obtained an arrest warrant from a magistrate in violation of *Malley* or *Franks*, then nothing more is required to show that the independent intermediary doctrine does not apply with respect to that intermediary's decision. *See Mayfield*, 976 F.3d at 487.

That being the case, however, does not necessarily prevent a *second* intermediary's decision—such as a grand jury's subsequent indictment—from triggering the independent intermediary doctrine to ultimately insulate the officer from liability. *See Winfrey v. Rogers*, 901 F.3d 483, 489-90, 496-97 (5th Cir. 2018) (acknowledging that a grand jury's subsequent indictment, via the independent intermediary doctrine, could insulate an officer from a *Franks* violation committed before a magistrate). And that is the very situation that the district court held, and the defendants continue to argue, is presented here.

B.

The district court's holding—that the grand jury's indictment triggered the independent intermediary doctrine and that the plaintiffs failed to plead facts establishing an exception—turned on both the purported factual inadequacy of the plaintiffs' pleadings and legal conclusions about the

No. 20-50367
c/w Nos. 20-50372, 20-50380, 20-50408, 20-50453

nature of the independent intermediary doctrine and its exceptions. We address these legal conclusions first. To do so, we will temporarily make two assumptions related to the plaintiffs' pleadings.[1] First, we will assume that the plaintiffs have adequately alleged a *Franks* claim with respect to the magistrate's warrant in a manner identical to the plaintiffs in *Terwilliger*. Second, we will assume—as the plaintiffs argue—that they have adequately alleged that the grand jury was misled in the same way that the magistrate was misled. That is, that the original *Franks* violation was repeated before the grand jury. If so, the question is whether that suffices to render the independent intermediary doctrine inapplicable to the grand jury's indictment.

As a legal matter, the district court held that in order to show that the grand jury's deliberations were tainted, the plaintiffs had to adequately allege that (1) *each* defendant (2) *maliciously* omitted evidence or misled the jury. Because the defendants continue to press those purported requirements here, we address each in turn.

1.

We begin first with the argument that "each" defendant must have tainted the grand jury. There is no such requirement. Fundamentally, the argument confuses the scope of liability for a false arrest with what is necessary to show that an intervening intermediary's actions were not truly independent. Consider the present circumstances. To be sure, the plaintiffs here must adequately plead (and ultimately prove) that each defendant falls within the scope of liability for the *Franks* violation allegedly committed in securing the arrest warrant from the magistrate. *See Terwilliger*, 4 F.4th at

---

[1] We return to the factual adequacy of the plaintiffs' pleadings below. *See infra* Section III.C.

283-84; *Melton*, 875 F.3d at 263 (holding that "an officer must have assisted in the preparation of, or otherwise presented or signed a warrant application in order to be subject to liability under *Franks*"). That is because the *Franks* violation with respect to the magistrate's warrant is the plaintiffs' cause of action. *See Hart v. O'Brien*, 127 F.3d 424, 442 (5th Cir. 1997) (describing that a *Franks* violation "states a valid cause of action under the Fourth Amendment"), *abrogated on other grounds as recognized in Anokwuru*, 990 F.3d at 964; *see also Blake*, 921 F.3d at 217-18 (discussing the plaintiff's *Malley* and *Franks* "claims" and making no mention of the independent intermediary doctrine).

By contrast, despite its conceptual overlap with *Franks*, the "taint exception" to the independent intermediary doctrine is not a cause of action—it is an exception to a doctrine that *insulates* an official who would otherwise be liable for a false arrest. *See McLin*, 866 F.3d at 689. In other words, no defendant is being held liable for "tainting" the intermediary as that concept is deployed within the independent intermediary doctrine. As a practical matter, in cases involving only one intermediary, the allegations that prove a *Franks* claim will do double duty as the allegations that also establish the taint exception. That is why, in addition to being an independent cause of action, this court also describes *Franks* as a functional exception to the independent intermediary doctrine, as discussed above. *Terwilliger*, 4 F.4th at 281. But in a *Franks* case where a second intermediary is involved, a plaintiff need only show that the deliberations of the intermediary were tainted such that the second intermediary, like the first, did not have "all the facts" before it necessary to render an independent determination of probable cause. *Winfrey*, 901 F.3d at 497 (quoting *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010)).

To conclude otherwise would allow for scenarios that would render the independent intermediary doctrine meaningless. For example, assume

No. 20-50367
c/w Nos. 20-50372, 20-50380, 20-50408, 20-50453

that a police officer would be liable for a *Franks* violation for patently lying in a warrant affidavit submitted to a magistrate in order to arrest an individual innocent of a crime. And assume that after the individual is arrested, a prosecutor secures a separate witness to repeat identical lies in order to obtain a grand jury's indictment. In such a scenario, no one could describe that the grand jury acted independently to determine probable cause or that its deliberations were not tainted, even though the defendant police officer was not presented as a witness to lie to the grand jury himself. *See Winfrey*, 901 F.3d at 497 (holding that the grand jury did not act as an independent intermediary because the "material information" that was omitted from the arrest warrant affidavit was not shown to have been submitted to the grand jury).[2]

In sum, while each defendant must fall within the scope of liability for the *Franks* violation alleged here (centering on the arrest warrant obtained

---

[2] The cases cited by the defendants and the district court below do not hold otherwise. In *Shaw* and *McLin*, for example, it was true that the defendants who allegedly committed the false arrest also allegedly tainted the intermediary's decision, but neither case holds that the same actors *must* have tainted the intermediary. *See Shaw*, 918 F.3d at 417-18; *McLin*, 866 F.3d at 689-90. Likewise, in *Hand v. Gary*, this court simply did not confront the situation where a separate actor taints the intermediary—rather, in that case the grand jury had not been tainted at all. 838 F.2d 1420, 1428 (5th Cir. 1988).

No. 20-50367
c/w Nos. 20-50372, 20-50380, 20-50408, 20-50453

from the magistrate),[3] there is no requirement to show that each and every defendant also tainted the secret grand jury deliberations.[4]

2.

"At common law, in cases where probable cause to arrest was lacking, [an officer's] immunity turned on the issue of malice, which was a jury question." *Malley*, 475 U.S. at 341. Although that is no longer the case,[5] this court's jurisprudence on the independent intermediary doctrine developed when an officer's malice was still the central inquiry for immunity. *See Rodriguez v. Ritchey*, 556 F.2d 1185, 1193 (5th Cir. 1977) (en banc); *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982). Thus, in describing the doctrine, this court emphasized that an independent intermediary's decision would insulate an officer who had acted with malice in making an arrest without probable cause—i.e., an officer who would otherwise be liable for false arrest. *See Thomas v. Sams*, 734 F.2d 185, 191 (5th Cir. 1984) (citing *Smith*, 670 F.2d at 526)). But recognizing that an officer's malice could lead him to undermine the intermediary's independence, this court clarified that "the chain of causation is broken only where all the facts are presented to the grand jury, or other independent intermediary, where the *malicious motive* of the law

---

[3] For example, this court in *Terwilliger* held that the plaintiffs there did not adequately allege that Chief Stroman or Assistant Chief Lanning, who are also defendants in this case, fell within the scope of the alleged *Franks* violation and thus affirmed the district court's decision to dismiss them from the case. *Terwilliger*, 4 F. 4th at 284 (citing *Melton*, 875 F.3d at 263). As explained below, we do not decide if that is also true here and instead leave that determination to the district court, in the first instance, on remand.

[4] This is, of course, also true for claims premised on *Malley* violations, as *Malley* violations are similarly a functional exception to the independent intermediary doctrine. *See Mayfield*, 976 F.3d at 487.

[5] *See Malley*, 475 U.S. at 341 ("Under the *Harlow* standard, on the other hand, an allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." (citing *Harlow v. Fitzgerald*, 457 U.S. 800 (1982))).

No. 20-50367
c/w Nos. 20-50372, 20-50380, 20-50408, 20-50453

enforcement officials does not lead them to withhold any relevant information from the independent intermediary." *Hand*, 838 F.2d 1427-28 (emphasis added).[6] In short, our cases establishing the independent intermediary doctrine and the taint exception were concerned about the typical false arrest scenario of the era—an officer who maliciously sought to arrest someone without probable cause.

Now that the Supreme Court has subsequently made clear that there are false arrest claims for which an officer can be liable that do not turn on the officer's malice—e.g., *Malley* and *Franks* claims—it is unclear why an actor's "malice" in tainting the intermediary is relevant in such cases. But regardless of its provenance, this court has continued to quote the "malicious motive" language in modern cases when describing the independent intermediary doctrine and the taint exception. *See, e.g.*, *McLin*, 866 F.3d at 689; *Buehler*, 824 F.3d at 554; *Cuadra*, 626 F.3d at 813. And although our independent intermediary cases rarely turn on the *mens rea* requirements of the taint exception, in cases where *mens rea* has been relevant, this court has held that "[t]o satisfy the taint exception, omissions of exculpatory information must be 'knowing[].'" *Buehler*, 824 F.3d at 555 (second alteration in original) (quoting *Cuadra*, 626 F.3d at 813-14).

---

[6] This court often credits *Hand* as the foundational case setting forth the independent intermediary doctrine and the taint exception. *See Murray v. Earle*, 405 F.3d 278, 292 (5th Cir. 2005) ("The rule of *Hand v. Gary* has since prevailed in this circuit for almost two decades."). *Hand* does not cite the Supreme Court's decision in *Malley* (or any other modern qualified immunity caselaw) despite being issued over two years after *Malley*. This is notable because *Malley* appeared to cast doubt on the "break the causal chain" theory later enshrined in *Hand*. *See Malley*, 475 U.S. at 345 n.7 (describing that the "break the causal chain" theory "is inconsistent with [the Supreme Court's] interpretation of § 1983"). However, this court has since described *Malley*'s critique of the "break the causal chain" theory as dictum. *See Murray*, 405 F.3d at 290-92.

However, no case has applied this "knowing" requirement when the underlying claim is premised on *Malley* or *Franks*. *See generally Buehler*, 824 F.3d 548 (making no mention of *Malley* or *Franks*); *Cuadra*, 626 F.3d 808 (same). As we have explained above, the reason why should be obvious: to do so would conflict with Supreme Court precedent. Again, the Supreme Court held in *Malley* that an officer who is objectively unreasonable in presenting a warrant application that facially lacks probable cause can be held liable for false arrest even if a magistrate approves it. 475 U.S. at 345-46. Nowhere does the Court describe that the officer must also "knowingly" misdirect the magistrate. Similarly, an officer can be liable under *Franks* for "deliberately *or recklessly*" including a material false statement or omission in a warrant application submitted to a magistrate. *Melton*, 875 F.3d at 264 (emphasis added). To superimpose a stricter threshold of liability would supplant Supreme Court law.

And although the grand jury here acts as a second intermediary, following the magistrate, nothing in this court's precedent suggests that the *mens rea* requirement with respect to the taint exception increases when a second intermediary is involved, or that magistrates and grand juries are treated differently. *See Hand*, 838 F.2d at 1427 (describing that an official will not be liable "if the facts supporting the warrant or indictment are put before an impartial intermediary such as a magistrate or a grand jury" (emphasis removed) (quoting *Sams*, 734 F.3d at 191)). Thus, just as an adequately pled *Malley* or *Franks* claim will also suffice to functionally apply the taint exception to the magistrate's decision, *ante* at 7-8, if a plaintiff adequately pleads that a second intermediary, such as a grand jury, has been misled in similar fashion, then the taint exception will apply to that intermediary's decision as well.

14

No. 20-50367
c/w Nos. 20-50372, 20-50380, 20-50408, 20-50453

## C.

Having clarified what the plaintiffs here must allege in order to satisfy the taint exception with respect to both the magistrate and the grand jury, the question remains whether their complaints have adequately done so.

This court has squarely addressed a plaintiff's burden at the pleading stage with respect to the taint exception. At the pleading stage, "'mere allegations of "taint"' . . . may be adequate to survive a motion to dismiss where the complaint alleges other facts supporting the inference." *McLin*, 866 F.3d at 690 (quoting *Cuadra*, 626 F.3d at 813). As always, the court must accept all factual allegations as true, evaluating whether the complaint states a plausible claim. *Id.*; *Shaw v. Villanueva*, 918 F.3d 414, 418 (5th Cir. 2019).

Given that "a general rule of secrecy shrouds the proceedings of grand juries," *Shields v. Twiss*, 389 F.3d 142, 147 (5th Cir. 2004), it is understandably difficult for a plaintiff to know what was said—or wasn't said—to the grand jury absent any form of discovery. While that reality doesn't excuse pleading requirements, it does mean that allegations about what was presented or omitted in the grand jury room will in some sense be speculative, which is why plaintiffs like the ones here will need to allege "other facts supporting the inference" of what they allege to have occurred in the grand jury room. *See McLin*, 866 F.3d at 690. [7]

---

[7] The district court appeared to hold that the plaintiffs could not use a grand jury witness's testimony as evidence (or as the basis of an allegation) that the grand jury's deliberations had been tainted, citing *Rehberg v. Paulk*, 566 U.S. 356, 369-70 (2012). That conclusion is erroneous. *Rehberg* held only that grand jury witnesses, like witnesses at trial, enjoy absolute immunity for their testimony to the grand jury. *Id.* at 369. Here, none of the plaintiffs asserts any cause of action that seeks to hold a defendant liable for his testimony to the grand jury. Rather, their claims seek to hold the defendants liable for their actions in securing an arrest warrant from a magistrate. As already explained, the taint exception is not a cause of action, *ante* at 10; relying on a grand jury witness's testimony to prove that

15

No. 20-50367
c/w Nos. 20-50372, 20-50380, 20-50408, 20-50453

Here, the plaintiffs allege that some of the same officials alleged to have participated in preparing the challenged warrant affidavit testified before the grand jury. They further allege that these officials made similar representations and omissions to the grand jury as they made to the magistrate. To further support such an inference, they allege that these same officials testified during public "examining trials" related to the Twin Peaks arrests and allege that this testimony also resembled the representations made to the magistrate. The plaintiffs also claim that video evidence which materially undermined probable cause was withheld from the grand jury, similar to how the defendants allegedly withheld exculpatory video evidence from the magistrate. *See Terwilliger*, 4 F.4th at 283. Finally, the plaintiffs allege that they have attempted to gain lawful access to records of the grand jury proceedings but were told that no transcript of the proceedings exists, nor any other recording from which a transcript could be made.

In sum, plaintiffs allege that specific representations and omissions that were made to the magistrate were also made to the grand jury and they allege "other facts" that support that inference. The only remaining question is whether those representations were *false* and whether the omitted information was material to probable cause *with respect to these plaintiffs*. That question, as explained above, overlaps with whether plaintiffs have adequately alleged a *Franks* violation with respect to the warrant application presented to the magistrate. [8]

the grand jury deliberations were tainted is not the same as bringing a claim against a witness for such testimony.

[8] It is not necessarily the case that the representations made to the magistrate that were false with respect to the *Terwilliger* plaintiffs are false with respect to the plaintiffs here. For example, notably absent from many of the plaintiffs' complaints are any specific statements denying affiliation with the Bandidos or Cossacks or denying that they were wearing the "signs and symbols" of either group (and that the defendants recklessly or

No. 20-50367
c/w Nos. 20-50372, 20-50380, 20-50408, 20-50453

We decline to decide whether the plaintiffs here have adequately pleaded a *Franks* violation with respect to any of the named defendants. This consolidated case comprises five separate appeals that in turn encompass close to twenty separate district court cause numbers and nearly 100 individual plaintiffs. While it may be the case that the plaintiffs' theories are similar, individual pleadings may make the difference. More fundamentally, the district court did not reach the question below, instead resting its holding on a legally erroneous application of the independent intermediary doctrine. With the benefit of this court's decision in *Terwilliger* and the present decision clarifying our law with respect to the independent intermediary doctrine, the district court is best suited to decide in the first instance whether each plaintiff here has adequately alleged a *Franks* violation with respect to the arrest warrant, and, if so, whether each plaintiff has also adequately alleged that the taint exception should apply to the grand jury's subsequent indictment. *See Montano v. Texas*, 867 F.3d 540, 546 (5th Cir. 2017) ("[A] court of appeals sits as a court of review, not of first view." (citation omitted)).

\* \* \*

We REVERSE and REMAND for further proceedings consistent with this opinion.

---

deliberately misrepresented otherwise). *See ante* at 5. Moreover, it does not get the plaintiffs very far to generally deny membership in a "criminal street gang." Indeed, it does not seem far-fetched that many members of the Bandidos or Cossacks would also deny being members of a criminal street gang, as that term is understood within the meaning of the offense of EIOCA. If the plaintiffs wish to establish a *Franks* violation, or, similarly, wish to establish the taint exception to the independent intermediary doctrine, they must point to omitted or misrepresented *facts*, not legal conclusions. *See Terwilliger*, 4 F.4th at 281-82.

17